### FARMERS' LOAN & TRUST CO. *v.* CENTRAL R. CO. OF IOWA.

*(Circuit Court, D. Iowa, S. D. 1883.)*

[INTERVENTION OF A. MCKAY AND JAMES NOLAN.

1. RECEIVER OF RAILWAY—SALE—ORDER OF CONFIRMATION.
   Where a railway receiver was discharged, and the sale of the property confirmed to a newly-organized corporation, with the provision in the order of confirmation that the new company should pay all the debts of the receiver, and all claims or liabilities pending in the foreclosure case, *held,* that the new company could not be permitted, after accepting the property, to question the validity of the order.

2. SAME—EQUITY—PAYMENT OF DEBTS OF RAILWAY.
   It is a proper exercise of the chancery power of the court to surrender the trust property to the purchaser, retaining jurisdiction of the original case, and retaining the authority to enforce the payment of the debts and liabilities incurred by the court's receiver in the operation of the railway.

In Equity.

A. McKay and James Nolan recovered judgments for injuries received by them as employes of the receiver of the Central Railroad Company of Iowa. They each filed their petition of intervention in the original foreclosure proceeding in which the receiver was appointed, asking that their judgments be made liens upon the railway. Both cases were by agreement submitted and argued together.

*John F. Lacey,* for intervenors.

*H. E. J. Boardman, J. H. Blair,* and *A. C. Daly,* for the Central Iowa Railway Company.

McCRARY, J. The Farmers' Loan & Trust Company, trustee, foreclosed, by proceedings in this court, a mortgage upon the property and franchises of the Central Railroad Company of Iowa. Receivers were appointed to manage the property and operate the road pending the litigation, which was protracted. There was a decree of foreclosure rendered in 1875, but as the case went to the supreme court on appeal with *supersedeas,* it was not until some time in 1879 that there was a sale under the decree, and an approval and confirmation of the same by the court. In the decree confirming the sale, and directing the delivery of the property to the purchaser, the Central Iowa Railway Company, the following order appears:

"And it is further ordered that the lawful debts contracted by the receiver during the litigation, and the costs and expenses of such litigation,

do constitute and are hereby made a first and paramount lien upon all said property, money, credit, and all additions thereto, to all other liens, and to the title acquired by the purchaser at the foreclosure sale, and by the conveyance to the Central Iowa Railway Company. And since it is not desirable to further continue said property under the control of the receiver, for the purpose of making net earnings for the payment of said debts, costs, and expenses, and the creditors having been notified, and making no valid or satisfactory objection thereto, it is further ordered and decreed that all said claims, and all claims pending in this court, debts, and liabilities, including the claims of attorneys and others, heretofore referred to special master Rogers, and reported on by him, and still pending on exceptions, shall be presented to the said Central Iowa Railway Company for adjustment and settlement, and the said Central Iowa Railway Company are ordered and directed to pay the said debts, costs, and expenses, and the creditors entitled thereto are hereby required to accept payment thereof, with interest at the rate of 7 per cent. per annum in one year from the date hereof. And for the purpose of enforcing the payment thereof, if need be, this court will and does retain jurisdiction of said cause for the purpose of enforcing said payment, and the lien herein provided for, without other action or independent proceeding."

Undoubtedly this order is broad enough to protect the rights of the present plaintiffs, who had then pending in the foreclosure proceeding their several claims for damages resulting from personal injuries caused by the alleged negligence of the receivers. It might be doubtful whether their claims were covered by the words "lawful debts contracted by the receivers," used in the first clause of the order above quoted, but the second sentence of the order includes "all claims pending in this suit, debts, and liabilities," and retains jurisdiction of the cause for the purpose of enforcing payment thereof. These plaintiffs had then filed their claims in the foreclosure suit, so that they are clearly within the terms of the order. By the statutes of Iowa they were entitled to liens upon the railroad for the amount of their damages from the time of recovering judgment. It is evident that the court was unwilling to permit a sale of the property under the decree of foreclosure, so as to deprive them of all remedy before they could have a hearing. The purpose of the above-quoted order was to turn over the railroad to the new company and permit them to take its management into their own hands, but without prejudice to the rights of these plaintiffs and others who were then in court, seeking in the foreclosure suit to enforce claims as against the property in the hands of the receivers. They were to have just such rights as against the property then in the hands of the receiver, and in the custody of the court, as they would have had if the court had declined a decree or order of sale in advance of the hearing upon the claims of all the parties to the suit. It was to oblige the purchaser, the present respondent, that a sale and delivery were ordered in advance of the settlement of the rights of some of the parties to the suit. The court had taken control of the railroad property and franchises, and had appointed receivers to manage the business and operate the road. These receivers, through their agents, had by negligence injured some persons, and had by contract become indebted in their official capacities to

others. They were not personally liable, but the property in their hands was liable, and could be reached by suit in form against them. That property the court was asked to turn over to the purchaser in advance of the adjustment and settlement of those claims. It would have been inequitable in the extreme if this had been done without any provision for the protection of the rights of the claimants; and it would be a strange result if we were obliged now to hold that the effort to protect such rights by the order above quoted had proved futile, and that the court had, by turning over the property, deprived the claimants in advance of a hearing of the means of enforcing their judgments when obtained.

It is, however, insisted by respondent's counsel that the *original* decree of foreclosure made no provision for these claims, and that it was not within the power of the court to embody the above-quoted order in the decree confirming the sale and ordering a delivery of the property to the purchaser. In other words, it is insisted that the order relied upon is void. It may have been voidable, but it is clearly not void. The court had jurisdiction of the parties and of the property, with power to make a conditional order of confirmation. The court was not bound to confirm the sale and relinquish control of the property without making provision for pending claims. It had full authority to make such provision. Whether it was necessary to file a supplementary bill and allege the fact of the filing of these claims subsequently to the rendition of the decree of foreclosure, if such was the fact, is a question of no consequence now, for it is not one of jurisdiction, and the most that could be maintained is that the court erred in that respect. The respondent did not raise the question at the proper time. No appeal was entered. The order was acquiesced in by the respondent. It accepted the property; took its title under the very decree it now calls in question. It cannot now be heard upon questions of mere form, and which go only to the regularity of the proceedings.

Decree for complainants.

LOVE, J., concurs.

[1] Reported by J. W. Hinsdale, Esq., of the Raleigh, North Carolina, bar.