THOMPSON v. NORTHERN PAC. RY. CO.

(Circuit Court of Appeals, Ninth Circuit. February 13, 1899.)

No. 462.

1. REVIEW—APPEAL OR ERROR.
    Where a federal court, on the sale in foreclosure proceedings of railroad property which has been operated by its receivers, makes it a condition of the sale that the purchaser shall pay, in addition to the amount bid, as a part of the purchase price of the property, all claims which may be legally established against the receivers growing out of their operation of the road, and retains jurisdiction of the cause for the purpose of enforcing such conditions, and subsequently grants leave to a claimant to bring an appropriate action on his claim, which he does on the law side of the court, while any judgment recovered is required to be brought into the equity suit to be fixed as a lien on the property, and enforced under the decree, the action itself is a separate action at law, and is properly reviewable by writ of error.

2. PARTIES—ACTION ON CLAIM AGAINST RECEIVERS AFTER THEIR DISCHARGE—PURCHASER OF PROPERTY.
    Under a decree in a railroad foreclosure suit, which requires the purchaser of the property, as a part of the consideration therefor, to pay all valid claims against the receivers growing out of their operation of the road, and reserves the right to the court to enforce such claims against the property, the purchaser is a proper party defendant to an action on such a claim, being entitled to defend, and, in an action commenced after the property has been conveyed to it and the receivers have been discharged, it may properly be made sole defendant.

3. RAILROADS—INJURY TO PERSON ON TRACK—CONTRIBUTORY NEGLIGENCE.
    Plaintiff was walking in the daytime on defendant's railroad track, across a bridge about 100 feet long, which was customarily used by the public as a footway, with the knowledge and acquiescence of the defendant. When at about the center of the bridge plaintiff was struck and injured by an engine, which approached him from behind. The evidence

showed that those in charge of the engine were negligent in failing to give any signal or warning of its approach. Both plaintiff and a companion testified that, on going upon the bridge, they looked back along the track, which could be seen for six or seven hundred feet, and that no engine was in sight. There was room upon the bridge for the plaintiff to have stepped aside and avoided injury. *Held*, that plaintiff could not be said, as a matter of law, to have been guilty of contributory negligence, but, under the circumstances shown, the question was one for the jury, under proper instructions.

In Error to the Circuit Court of the United States for the Northern Division of the District of Washington.

William Martin, for plaintiff in error.

Crowley & Grosscup and James B. Howe, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. This was an action for personal injuries alleged to have been sustained by Thomas A. Thompson (in whose behalf the action was brought by his guardian), by reason of the negligent operation of an engine on the railroad of the Northern Pacific Railroad Company. At the time of the injuries the road was the property of that company, but was in the hands of, and then being operated by, certain receivers appointed by the court below, in a suit theretofore brought in that court by the Farmers' Loan & Trust Company, a New York corporation, against the Northern Pacific Railroad Company for the foreclosure of a mortgage covering its property. That suit resulted in a decree of foreclosure and sale of the road, and, although no action for the injuries here complained of had then been commenced, the court, in order to guard and protect all rights, provided in its decree, among other things, that the purchaser of the road on which the accident in question occurred, "should pay, as part consideration and in addition to the sum bid [for such property], and should take the same and receive the deed therefor upon the express condition, that he, the purchaser, his successors or assigns, would pay, satisfy, and discharge, among other things, all unpaid indebtedness, obligations, and liabilities, contracted or incurred by the receivers of said Northern Pacific Railroad Company, before delivery of possession of the property of said Northern Pacific Railroad Company, sold within the jurisdiction of said court, or to any party or parties who are citizens and residents of said district, to wit, the state of Washington, provided that an action be brought to establish such indebtedness or liability within the time, after the accruing of such indebtedness or liability, allowed by the statute of limitations of the state wherein such indebtedness or liability shall have accrued, for the commencement of suit thereon; and that in event the purchaser [of said property], after demand made, shall refuse to pay any indebtedness or liability incurred by said receivers, upon fifteen (15) days' notice to such purchaser, his successors or assigns, the person holding the claim thereon might file his petition in said court to have the said claim established and enforced against said purchaser, his successors or assigns." At the sale under this decree, the defendant to the present action, the Northern Pacific Railway Company, was the purchaser of the property; and in the de-

crce of the court confirming the sale the court imposed the same terms and provisions as conditions accompanying the confirmation, and expressly reserved and retained jurisdiction of the cause, and power to enforce all the provisions of the decree of sale, and of the order of confirmation, "including the right to retake and resell any of the property within this district, if sold to such purchaser, in case such purchaser, its successors or assigns, shall fail to comply with any order of this court in respect of any payment of any of the prior indebtedness, obligations, or liabilities required in said decree, or in respect of any other of the terms or conditions of the said decree, or of this decree, within thirty days after the entering of such order." Thereupon the road, with appurtenant rights, was turned over to the purchaser railway company, which thereupon entered into the possession and operation of the road, and has so continued ever since, subject to the terms and conditions of the decree of sale and of the order of confirmation.

The plaintiff in error was injured on one of the tracks of the Northern Pacific Railroad Company on or about August 31, 1894, and while the road was being operated by the receivers. After it had been acquired by the defendant railway company, he presented, through his guardian, a claim for damages for the injuries so sustained by him to the defendant railway company, which for more than 15 days neglected and refused to pay the claim; and thereupon the plaintiff in error, by his guardian, filed in the foreclosure suit a petition for leave to sue for the damages claimed to have been sustained by him, upon which petition the circuit court made an order reciting, in substance, the facts above stated, and directing "that said petitioner, T. A. Thompson, by his guardian, Nels Thompson, be and is hereby permitted to bring and prosecute an action for said injuries in the circuit court of the United States for the district of Washington, Northern division, holding court at Seattle, Washington."

The plaintiff in error, by his guardian, thereupon commenced on the law side of the same court the present action against the defendant railway company, to recover damages for the injuries alleged to have been sustained by him through the negligent operation by the employés of the receivers of an engine on the railroad then in their charge, the complaint in the action setting out, among other things, the facts already stated. The action was tried before the court with a jury, and, upon the conclusion of the evidence on behalf of the plaintiff in the action, the court directed a verdict for the defendant thereto, upon the ground that the evidence showed such contributory negligence on the part of the injured plaintiff as precluded a recovery by him. The case is brought here by writ of error, and, on the part of the defendant in error and in support of the judgment given below, it is contended that, independently of the views of the trial court respecting the evidence, the judgment should be affirmed, on the ground that the error, if any, was without prejudice to the plaintiff in error, because, as it is claimed, the complaint does not state any cause of action against the defendant railway company. It is also claimed on the part of the defendant in error that the writ of error should be dismissed on the ground that the case was only subject to review by appeal. This latter view pro-

ceeds upon the theory that the plaintiff's proceeding for the enforcement of his demand, although in form an independent action at law, was in reality a petition in intervention in the foreclosure suit, and should therefore be regarded as an equitable proceeding.

By keeping in mind the origin of the alleged cause of action, and the proceedings necessary to enforce it, it is not difficult, we think, to correctly answer these objections. At the time of the injury complained of, the road on which it occurred belonged to a corporation that had been adjudged insolvent, on which ground the court below had taken the property into its possession, and committed its operation to certain receivers. The insolvent corporation, the Northern Pacific Railroad Company, was not liable for any damages inflicted in the operation of property of which it had thus been dispossessed, and in which operation it had no control or voice. The engineer and fireman upon the engine which caused the injuries complained of were not in the employ of that company, but were employés of the receivers of the court. Those officers, in their representative capacity, were responsible for the negligent acts of their employés, but they were not personally responsible for them. Any judgment recovered upon such a cause of action could be properly satisfied, under the direction of the court having jurisdiction over it, out of the property of the insolvent company in their hands, but not out of their own property. The termination of their trust relations to the property, therefore, ended their relations to the cause of action of the plaintiff in error. They were no longer subject to be sued therefor, for they were not personally liable, and they were no longer receivers. Any judgment that the plaintiff in error might have recovered during the receivership would, of course, have been provided for by the decree of the court administering the property. But the court was not unmindful of the fact that there might be obligations and liabilities not already established, incurred by the receivers, for which the property being administered by it was properly responsible; and, accordingly, in the decree directing its sale, the court provided that the sale be made upon the express conditions that the purchaser should pay, satisfy, and discharge, among other things, all such obligations and liabilities contracted for or incurred by the receivers before delivering over the possession of the property, provided that an intervening petition in the foreclosure suit, or an action to establish such indebtedness or liability, "has been or shall be brought within the time, after the accruing of such indebtedness or liability, allowed by the statute of limitations of the state wherein such indebtedness or liability shall have accrued, for the commencement of suit therein," and that such conditions should constitute a part of the consideration of the purchase. The purchase of the defendant railway company was made upon those express conditions, the sale was confirmed subject to the same conditions, and the property passed into the hands of the purchaser charged with those liabilities and obligations. And, in order to guard and protect the rights of all such claimants, as well as those of the purchaser, the court, directing and confirming the sale, retained jurisdiction of the cause to the extent necessary to afford such protection.

In the case of Jessup v. Railway Co., 44 Fed. 663, where a railroad in the hands of a receiver of the circuit court had been decreed to be sold, and the order directed the receiver to turn over to the purchaser the property sold, upon the conditions that the purchaser "agrees to pay, satisfy, and fully discharge all the debts and liabilities of such receivership of every kind now remaining unpaid, and that it may further defend in the name of such receiver all litigated claims or demands against such receivership, now pending in this or other courts, and will fully abide by and pay any and all judgments and recoveries, together with costs, which may be rendered in any of such actions or litigations, and always protect and save harmless the said receiver from such claims, or any of them," the court held that the conditions constituted a part of the consideration exacted from the purchaser for the property, and that the adjudication of all such debts and liabilities pertained to that court, and accordingly enjoined one from proceeding in a state court to recover damages for an act committed by the receiver, saying, among other things:

"The promise and agreement of the purchaser constituted an additional consideration, and therefore added to such fund, as we have before stated; but, in good faith to said purchaser, it is the duty of this court to sift, scrutinize, and finally determine what claims shall be paid and what claims shall be rejected. In order to do this satisfactorily, this court should require all parties who assert any claim against such fund, or who claim any right to recover against such purchaser because of the stipulation and covenant made in this court, to establish such claim in this tribunal by proceedings usual in this class of cases. But if the said Potterf were permitted to prosecute his action in the state court, and recover a judgment therein, he would have a right to satisfy such judgment out of any property subject to levy in the hands of the purchaser, the Wabash Railway Company; whereas, under the covenants and agreements made in this court between the court and the purchaser, placing upon said covenants the legal construction hereinbefore given, any claim he might have against the receiver was to be satisfied out of the funds arising from the sale of this mortgaged property."

The appropriate proceeding for the recovery of damages for personal injuries is an action at law, in which the parties have the constitutional right of trial by jury. So, when the plaintiff in error, by his guardian, presented his petition to the court in the foreclosure suit, jurisdiction over which the court retained for the purpose of enforcing and protecting such claims, that court did not undertake to determine, in that equitable suit, the legal liability asserted by the plaintiff in error, or to assess any damages therefor, but very properly authorized the petitioner to bring and prosecute, in the same court, an appropriate action, which he proceeded to do on its law side. Should such action result in establishing the demand, he will be required by the court to bring his judgment into the equity suit, where, in pursuance of the decree of sale, and of the order confirming it, the court will make the judgment a lien upon the property, and enforce the lien by a sale of the property, if necessary. This is the appropriate and orderly course of proceedings in such cases, and secures the rights, and enforces the obligations, of all parties intended to be covered by the decree of sale and order of confirmation under which the defendant railway company purchased and took the property from the court's receiv-

ers. See Farmers' Loan & Trust Co. v. Central R. Co. of Iowa, 7 Fed. 537, 17 Fed. 758. The present proceeding, therefore, is not, as contended on behalf of the defendant in error, an equitable proceeding, but is, what it purports to be, an action on the law side of the court, and is properly reviewable by writ of error. The motion made on behalf of the defendant in error for the dismissal of the writ is therefore denied.

The next question to be determined is whether the defendant railway company is a proper defendant to the present action. It is not necessary to decide whether its promise, constituting one of the considerations for the property acquired through the receivers, to pay all liabilities incurred by them, rendered it liable to answer generally therefor. As receivers are not personally responsible for torts committed by their subordinates, and in which they were in no way personally concerned, it is obvious, as said by the court in Farmers' Loan & Trust Co. v. Central R. Co. of Iowa, 7 Fed. 539, that such suits against them are really and substantially suits against the fund or property of which they are the custodians; for they only represent the property out of which any judgment against them, in their representative capacity, is satisfied. In the present case, the property responsible to the plaintiff in error, if he shall make good his allegations, passed from the receivers under the order of sale and confirmation made by the court to the defendant railway company, subject to the condition that the property should continue charged with any liability that existed against the receivers, together with the promise on the part of the defendant railway company, made as a part of the consideration of its purchase, to pay such liability. Upon the question as to whether the liability in reality exists, the defendant company is manifestly entitled to be heard, and it was for that reason that it was made party defendant to the action; and, since the relations of the receivers to the cause of action of the plaintiff in error ceased upon the termination of their trust relations to the property, the defendant company was properly made sole defendant thereto.

In Sloan v. Railway Co. (Iowa) 16 N. W. 331, the Farmers' Loan & Trust Company had brought an action in the United States circuit court for the foreclosure of a mortgage executed by the Central Railroad Company of Iowa, in which suit a receiver was appointed by the court, who took possession of and operated the road. The suit resulted in the decree of sale, and subsequently in a decree directing the transfer and delivery of the property, together with all additions thereto, to the Central Iowa Railway Company. In the latter decree were inserted the following clauses:

"And it is further ordered that the lawful debts contracted by the receiver during the litigation, and the costs and expenses of such litigation, do constitute, and are hereby made, a first and paramount lien, upon all said property, moneys, credits, and all additions thereto, to all other liens, and to the title acquired by the purchaser at the foreclosure sale and by the conveyance to the Central Iowa Railway Company; and since it is not desirable to further continue said property under the control of the receiver for the purpose of making net earnings for the payment of said debts, costs, and expenses, and the creditors having been notified, and making no valid or satisfactory objection thereto, it is further ordered and decreed that all said claims, and

all claims pending in this court, debts, and liabilities, including the claims of attorneys and others, heretofore referred to Special Master Rogers, and reported on by him, and still pending on exceptions, shall be presented to the said Central Iowa Railway Company for adjustment and settlement; and the said Central Iowa Railway Company are ordered and directed to pay the said debts, costs, and expenses; and the creditors entitled thereto are hereby required to accept payment thereof, with interest at the rate of 7 per cent. per annum, in one year from the date hereof; and for the purpose of enforcing the payment thereof, if need be, this court will and does retain jurisdiction of said cause for the purpose of enforcing said payment, and the lien herein provided for, without other action or independent proceeding."

In accordance with this order and decree, the property was transferred to, and accepted by, the Central Iowa Railway Company. While the road was in charge of the receiver, a claim for damages was presented to the circuit court, and permission asked to bring a suit against its receiver, resulting in an order by that court that the claimant "be permitted to bring a suit at law in this court, or in the district or circuit courts of Iowa, on his said claim, against the Central Iowa Railway Company, the Central Railroad Company of Iowa, and H. L. Morrill, receiver; that, if suit is brought in the state courts, the judgments and orders be certified to this court." The claimant having brought suit in one of the courts of the state, it was taken to the supreme court of Iowa, where that court, in speaking of the order made by the circuit court, said:

"The order made by the court is exceedingly broad, and includes 'claims, debts, and liabilities.' Against whom? The answer must be, the receiver, or property which, in his hands, was liable for the claim, debt, or liability. We have determined that the receiver, or rather the property in his charge, was liable for the payment of the plaintiff's claim. The appellant, therefore, received the property charged with this liability. If it had been made a condition in the order that appellant, before the property was transferred or conveyed to it, should execute a written obligation, binding itself to pay this claim, and it had done so, its liability, we think, would not be doubted. There would have been a sufficient consideration for the promise. What was done in legal effect amounts to the same thing. The jurisdiction of the court must be conceded. It had possession of the road through its receiver, and, during the time it was operated by the receiver 'for the court, a supposed liability to the plaintiff occurred. The court, in substance, said to the appellant: 'We will discharge the receiver, and place the road, and all property and rights connected therewith, in your possession, and vest you with the legal title thereto, provided you will assume and pay all liabilities incurred during the time the road has been operated by the receiver.' The appellant accepted the road upon the conditions annexed. There was an offer and an acceptance. Ordinarily, this is sufficient to constitute a contract. Whether there was a valid contract or not is not material, because the appellant cannot retain the property and repudiate the conditions. If the appellant was entitled, absolutely, to the property, it should not have accepted, but contested, by appeal or otherwise, the legality of the conditions. It is true, the appellant was not a party to the action of foreclosure, but it becomes a party to the order when it accepted the property. Whether the order of the court was valid or not, we have no occasion to determine in this collateral proceeding, because its validity is not assailed, and possibly could not be, successfully, for the reason that appellant's possession, if not its title, is based thereon. We think the plaintiff is entitled to recover of the defendant. Whether, or in what manner, the judgment can be enforced, is not before us."

See, also, authorities supra.

It remains to consider whether or not there was error on the part of the court below in directing a verdict for the defendant.

The accident occurred on a bridge of the railroad company constructed on Hood street, in the city of Tacoma, at its intersection with Fifteenth street. The bridge is built over Fifteenth street at such height as to admit of the passage of teams, as well as foot passengers, under it. On its top were constructed three railroad tracks, separated by a solid wood fence about three feet high, extending the entire length of the bridge. Along the tracks that crossed the bridge people were accustomed to travel on foot, with the knowledge, acquiescence, and license of the railroad company. The plaintiff in error had for more than 10 months prior to his injury been accustomed to pass along them in going to and from his work. He knew that the trains and engines of the company were constantly passing over the tracks, and, consequently, that it was a place of danger. The accident occurred as he was going to his work one morning, about 7 o'clock. A number of workmen were crossing the bridge at the time, and one—a man named Larson—was walking with plaintiff in error, but on another track. The plaintiff was walking along the left side of the middle track when he was struck. The engine that inflicted the damage approached from his rear. The evidence tended to show that no signal of its approach was given by those in charge of the engine. The trial court, in passing upon the defendant's motion for an instruction to the jury to return a verdict in its favor, said:

"The evidence shows that there was negligence in this case in not giving some signal,—ringing the bell. I cannot say, as a matter of law, that there was negligence in not stopping the engine when the plaintiff was seen upon the track, if he was seen by the engineer: but it would be negligence to run against him, and not stop the engine, but keep on going, and strike him, without giving some sign or warning. In a place of that kind, it is not necessarily the duty of the engineer to stop his engine when he sees some one ahead of him on the track on foot, because he had a right to assume, in a place like that, when a man traveling afoot could get out of the way, that he would get out of the way. * * * Now, this much may be assumed in the case: That there is evidence to go to the jury tending to prove that there was negligence on the part of the defendant, but, notwithstanding that negligence, the plaintiff cannot recover, where, in making out his case, he shows by his own testimony that he was negligent in a manner which contributed to cause the injury. * * * As I have already said, in this testimony it appears that there, in the clear open space, a man with eyes could not have failed to see the danger from this particular locomotive, if he was on the alert; and, if he did not look, he is guilty of negligence; and if he did look, and saw the engine in time to have avoided the collision with it, and did not get out of the way, he is guilty of negligence. There is no escape from the proposition that his own negligence was a contributing cause to this injury. * * * It would be the duty of the engineer to stop after seeing 'the man, if he was in a position where it was plain that he could not get out of the way: but that is not the case here. A man on any part of that bridge, by stepping a foot or two, could get out of the way of that engine,—or I will say five or six feet,—and that railing in the center of the bridge is not such an obstruction that a man could not get over it, or get on it. This man could have got out of the way, and the engineer had the right, if he did see him, to assume that he would get out of the way."

It is undoubtedly true that if the engineer saw the plaintiff in error, and had given warning of his approach, he would have had the right to assume that the plaintiff in error would get out of the way. But it seems that the engineer did not give any warning of

the approach of the engine; certainly, there was testimony to show that he did not. There was also testimony tending to show that the plaintiff in error, just before going upon the bridge, looked back to see if there was any train or engine approaching; that the track could be plainly seen for at least six or seven hundred feet, and that no train or engine was in sight. He knew, as has been stated, that the place was a dangerous one; but those in charge of the engine also knew that people were in the habit of walking along the railroad tracks over the bridge. It was, therefore, the clear duty of the engineer to keep his eyes open and his face to the front. It was equally the duty of the plaintiff in error to keep his eyes open, and a careful watch in both directions. Manifestly, he could not look in opposite directions constantly. Whether or not he exercised the degree of care required of him by the law ought, we think, to have been left to the jury, under appropriate instructions in respect to contributory negligence. It is entirely true that, when the undisputed evidence is so conclusive that the court would be compelled to set aside a verdict returned in opposition to it, it should withdraw the case from the consideration of the jury, and direct a verdict; but ordinarily negligence and contributory negligence are questions of fact, to be passed upon by a jury. Elliott v. Railway Co., 150 U. S. 245, 14 Sup. Ct. 85, and cases there cited.

Both Larson and the plaintiff in error testified that, when within five or ten feet of the bridge, they looked back over the track, which was plainly visible for six or seven hundred feet, and that no engine was in sight; yet, when about halfway across the bridge, the whole length of which did not exceed 100 feet, the plaintiff in error was run over by the engine approaching from the rear. Where the engine came from does not clearly appear. On the part of the defendant in error it was endeavored to be shown that it was on a switch as the plaintiff passed, and that it had to make two switches, and move 700 feet, before overtaking the plaintiff in error. Its counsel cite certain portions of the testimony in their brief, and say:

"It is clear from the foregoing abstract of the testimony that, had the plaintiff looked around at any time while the engine which struck him made two switches and moved over a distance of 700 feet, he would have seen the engine in time to have escaped. One of the two following conclusions is therefore inevitable: (1) That, before going on the bridge, the plaintiff did not look for the engine; or, (2) if he did look, he saw the engine and took his chances. In either event, he contributed to the accident, and cannot recover."

In response to a somewhat similar argument, the court, in the case of Low v. Railway Co., 72 Me. 313, 322, said:

"Defendant's counsel put the dilemma thus: 'If the night is light enough to see the gangway, no railing or light is necessary to enable a person to avoid it; and if the night is too dark to allow of its being seen, then a person groping around in the dark, and unconsciously walking into it, is guilty of such negligence as to preclude him from recovering.' But, if this plausible statement is absolutely correct, there never can be an accident of this description for which the injured party can recover. The idea seems to be that there is no necessity for any precautions on the part of the wharf owners, because constant vigilance on the part of those who come there when it is light enough

to see the danger will enable them to avoid it; and, duty or no duty, they must not come without a light in the nighttime, or they will be set down as wanting in ordinary care, and so forfeit their right to protection or compensation. The argument establishes, if anything, too much. The questions are not of a character to be disposed of by a little neat logic. They are rather, as remarked by the court in Elliott v. Pray, 10 Allen, 384, 'questions which can be best determined by practical men, on a view of all the facts and circumstances bearing on the issue.' No such sweeping syllogism as this presented by defendant's counsel can be adopted as a rule of decision."

We are of the opinion that the case should have been submitted to the jury under appropriate instructions. The judgment is reversed, and cause remanded to the court below for a new trial.