E. G. ALLEN v. WISCONSIN CENTRAL RAILWAY COMPANY and
Another.[1]

January 22, 1909.

Nos. 15,896—(187).

**Negligence in Making Up Train.**

Although a switching crew, engaged in making up a freight train in
a railroad yard, was not required to give notice to the crew of the train
when cars were about to be connected and when the train was finally
made up, yet the switching crew was required to perform the work with
reasonable care; and, if it was performed in a reckless or unusual man-
ner, the railway company was not excused from responsibility simply
because the train crew commenced work upon the train under the sup-
position that the switching crew had completed its work.

**Contributory Negligence of Train Brakeman.**

The members of the train crew were required to anticipate and assume
the dangers attending switching operations when conducted in the usual
manner; but they were not bound to assume the results attending reck-
less switching, and a brakeman was not necessarily guilty of contributory
negligence in going between cars to couple up the air hose, acting upon
the belief that the switching was practically completed.

Action in the district court for Ramsey county against the Wisconsin
Central Railway Company and the Chicago, Milwaukee & St. Paul
Railway Company to recover $25,000 for personal injuries sustained
by plaintiff while in the employ of defendant Central Company. The
case was tried before Olin B. Lewis, J., who directed a verdict in
favor of the Central Company, and a jury which rendered a verdict
against the St. Paul Company for $16,000. The defendant Central
Company used the railway yards of the St. Paul Company at Milwau-
kee under an agreement by the terms of which it was the duty of the
St. Paul Company to do all switching and making up of trains for the
Central Company. The other facts are stated in the opinion. From
an order denying plaintiff's motion for a new trial as against the Cen-
tral Company, he appealed. From an order denying its motion for
judgment notwithstanding the verdict or for a new trial, defendant
St. Paul Company appealed. Affirmed on both appeals.

[1] Reported in 119 N. W. 423.

*Humphrey Barton,* for appellant Allen.

*F. W. Root,* for appellant St. Paul Company.

*Thos. H. Gill, Walter D. Corrigan, Walter L. Chapin* and *Clifton Williams,* for respondent.

LEWIS, J.

Plaintiff was a brakeman in the employ of the Wisconsin Central Railway Company, and belonged to a crew, consisting of the conductor and another brakeman, engaged in operating a freight train between Milwaukee and Fond du Lac, Wisconsin. The train was made up at the railroad yards in the city of Milwaukee by a switching crew in the employ of the Chicago, Milwaukee & St. Paul Railway Company. The manner of making up the train was as follows: The switching crew first set the caboose in on the proper track, and pulled the several freight cars out from the various lead tracks and delivered them in the proper order, thus building up the train from the caboose forward. It was the usual practice, after getting the several cars from the different lead tracks in the immediate yard, to go to a point several hundred feet from the yard, and get what were known as the "merchandise cars," bring them over, and complete the train. On the occasion in question the plaintiff, the conductor, and the other brakeman had, according to their custom, taken their positions in the caboose, which had been placed on the track, at the usual hour in the evening, about eight o'clock, and while waiting there some cars were connected, and the crew, thinking the merchandise cars had been attached, went out to perform the work of getting ready to start the train. It was the conductor's duty to register the number of cars, and the plaintiff's duty to connect the air couplings between the several cars.

On this occasion they proceeded in the usual manner, commencing at the caboose. Plaintiff passed in between the caboose and the next freight car for the purpose of making the connection; but, having some trouble in adjusting it, he called upon the car inspector, who happened to be standing near by, for something with which to drive the parts together. Ordinarily the air connection could be made in a few seconds, but at this time plaintiff was engaged two or three times longer than usual, and just as he had finished the work and was in the act of turning around to step out from between the cars, the train was struck by

other cars in the process of switching, and suddenly driven back for a distance of four or five car lengths, and plaintiff was caught under the wheels, and one leg was crushed and the other injured.

A verdict was recovered, and at the trial the cause was dismissed as to the Wisconsin Central Railway Company. The Chicago, Milwaukee & St. Paul Railway Company appealed from an order denying its motion for judgment notwithstanding the verdict, and the following questions are before the court:

Appellant insists that there is no evidence reasonably tending to show that it was guilty of any negligence in the switching operations, and that it was conclusively established by the evidence that respondent was guilty of contributory negligence. Both propositions will be discussed together.

Appellant's argument is based upon the claim that it was the universal custom for the Wisconsin Central train crew to refrain from working about the train until the switching was finally completed and the train made up, and that appellant did not violate any duty which it owed respondent, conceding that it was guilty of negligence in the switching operations. It is true that the switching crew were not required to give notice to the train crew when they were about to add more cars in making up the train, and were not obliged to give notice of the completion of their switching operations. The train crew were required to anticipate that cars would be switched in at any time, and they were to determine for themselves when the train was finally made up. But there was no special rule on the subject, nor was it the custom for them to wait until the train was finally made up before commencing the work of registering the number of cars and connecting the air. As testified to by respondent, the train was usually delayed in getting out of the yards, and the train crew did not always wait until the train was completed before commencing their work. Occasionally they arrived at the front of the train, in the course of their work as it was being made up, and would meet the switching crew engaged in completing their work, although the merchandise cars were usually the last to be attached.

The particular incident which caused the injury was a most careless act in switching. The switching crew shunted into the cars already on the track ten or twelve merchandise cars at the rate of four or five

miles an hour. The impact was such that it damaged property in the caboose and drove the train back four or five car lengths. The switching crew knew that the train crew were likely to be in the caboose at that time, even if they did not expect the men to be coupling up cars. The train crew were justified in assuming that the switching would be done in the usual manner, and to conduct themselves accordingly. It is evident that the conductor and the brakeman, when they went out of the caboose for the purpose of registering and connecting the cars, assumed that the merchandise cars had been connected and that the main switching operations had been done. They were led to that opinion by a shock felt while in the caboose. It was the general practice to wait until the merchandise cars were attached, and it is quite clear that on this occasion the crew did not intend to commence work on the train until those cars had been put on. However, the fact that they made a mistake did not change the nature of the duty which the switching crew owed them. That duty was the exercise of ordinary care, such as was customarily employed in such operations. That crew had no license to engage in all manner of reckless switching simply because the rules of the company did not require them to give notice of their operations.

Of course, respondent was required to exercise ordinary caution in connecting the cars, and to do so with reference to the dangers of working while the switching operations were going on. The rules did not prohibit the coupling of cars while switching was in progress, and by practice the train crew were permitted to act upon their own judgment, so as to avoid delay. But human judgment is not infallible, and a mistake of judgment does not always foreclose recovery of damages for the negligence of another. Respondent remained longer than usual between the cars; but it was necessary, and there is every reason to believe that he would not have been injured had the switching been conducted in the usual manner. The evidence was sufficient to sustain the finding of the jury as to both propositions.

We discover no ground for holding the Wisconsin Central Railway Company responsible for the accident, and the trial court correctly directed a verdict for that company.

Both appeals affirmed.