## KOZAK v. ERIE R. CO.

(Supreme Court, Appellate Division, Second Department. December 10, 1909.)

1. MASTER AND SERVANT (§ 278*)—INJURIES TO SERVANT—SUFFICIENCY OF EVI-
DENCE—NEGLIGENCE.

    In an action for injuries to a car repairer, while passing under the
    bumpers of disabled cars on a switch in the company's yards, owing to
    a train being backed against such cars, evidence *held* to sustain a finding
    that proper signals were not given and suitable precautions taken by the
    trainmen.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 969–
    971; Dec. Dig. § 278.*]

2. MASTER AND SERVANT (§ 289*) — INJURIES TO SERVANT — JURY ·QUESTION —
CONTRIBUTORY NEGLIGENCE.

    In an action for injuries to a car repairer, while passing under the
    bumpers of disabled cars on a switch in the company's yards, owing to a
    train being backed against such cars while they were at the end of the
    switch, whether plaintiff was negligent *held* for the jury.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1118;
    Dec. Dig. § 289.*]

3. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—JURY QUESTION—
NEGLIGENCE.

    In an action for injuries to a car repairer, while passing under the
    bumpers of disabled cars on a switch in the company's yards, by a train
    being backed against such cars while at the end of the switch, whether
    the company was negligent *held* for the jury.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1033,
    1034; Dec. Dig. § 286.*]

Appeal from Trial Term, Orange County.

Action by George Kozak against the Erie Railroad Company. . From
an order setting aside a verdict for plaintiff and dismissing the com-
plaint, and from a judgment for defendant, plaintiff appeals. Re-
versed, and verdict reinstated.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS,
THOMAS, and RICH, JJ.

John C. Robinson, for appellant.
E. N. Oakes, for respondent.

WOODWARD, J. The plaintiff was employed as a car repairer
by the defendant, and on the morning of November 25, 1908, was en-
gaged in the performance of his duties in the yards at Sparrowbush,
near Port Jervis, on the defendant's lines. As he was crossing the
tracks on his way home in the early morning of that day, he was run
down by one of the defendant's cars, and suffered injuries of so seri-
ous a nature that it was found necessary to amputate both of his legs.
He brought this action on the theory that the defendant was liable in
damages by reason of the negligent acts of the conductor and engi-
neer in charge of the operation of the train which caused his injuries,
who, he contends, are not fellow servants, but vice principals of the
corporation, within the meaning of section 42a of the railroad law,
added to Laws 1890, p. 1082, c. 565, by Laws 1906, p. 1682, c. 657.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

It was conceded that this section was applicable to the facts of the case, but the trial court set aside a verdict for $25,000, and dismissed the complaint, without specifying the grounds for such order; and the plaintiff appeals to this court.

A somewhat exhaustive examination of the evidence is necessary, in view of our determination to reverse the judgment and order and reinstate the verdict; and such examination will disclose, it is thought, abundant confirmation of the plaintiff's contention that there were several controverted questions of fact distinctly for the consideration of the jury, and a sufficient preponderance of evidence in the plaintiff's favor to sustain the verdict. The defendant's yards were crossed from east to west by a number of parallel tracks, known as receiving tracks, lying north of the track on which the plaintiff was injured, which was known as track No. 13. The plaintiff's duties required him to make repairs on incoming trains on the receiving tracks, and on the south side of track No. 13 was a toolhouse or shanty, maintained by the defendant as a sort of headquarters for employés working on the receiving tracks. They were accustomed to keep their working tools there, and had the privilege of staying there in their idle moments.

On the day of the accident, between 5 and 6 o'clock in the morning, while it was still dark, the plaintiff attempted to cross track No. 13 from the toolhouse to the tracks on the north, for the purpose of there boarding a switch engine to be taken home, as had, it appears, been his custom and that of his fellow workmen. Standing on track No. 13 at that point, and up and down the track for some distance, were a number of coal cars which were temporarily out of use. At the point where the plaintiff attempted to cross, two of these so-called dead or disabled cars were uncoupled, but not far enough apart to permit the plaintiff to pass between them, walking upright. He stooped to pass under the bumpers, and at that moment the line of cars was suddenly moved to the west for a distance and with a force sufficient to cause the plaintiff's injuries. It is conceded that the movement of the dead cars was caused by the impact, at the extreme easterly end of the line, of a section of a freight train against which another section of the train was pushed by an engine to effect a coupling of the two sections. Some testimony was offered by the defendant to prove that the plaintiff did not attempt to cross between the cars, but under the body of one of them; otherwise, this is a fair statement of the undisputed matters out of which arise the controverted questions to which the verdict should be allowed to stand as the final answer.

The defendant lays stress on the assertion that the plaintiff had no duties on track No. 13; that it was not necessary for him to cross that track to reach his home from the toolhouse. It appears, however, that it had been the custom of the workmen at that point to board the switch engine to be taken to their homes, that the boss of the gang had authorized this practice, that the plaintiff had crossed in the same place daily for months to get to and from the receiving tracks from the toolhouse, and that this crossing was necessary. In this the plaintiff was corroborated by one of the defendant's own witnesses, Kilpatrick, a car inspector, whose testimony is:

"As a matter of fact, we men had to cross these tracks, this track 13, almost daily. Our work could not be done unless we did cross it. It was an absolute necessity for us men, including Kozak, to cross that track from time to time to do the work that we were asked to do there. Most of our work was north of that track. We had to cross it every time we went to our work."

Additional corroboration of the plaintiff's story as to the necessity of crossing track No. 13 is found in the relative situation of the tracks where the repairers worked and their toolhouse—the tracks on the north side of track No. 13; the toolhouse on the south side. This condition was created and maintained by the defendant, and suggests a further conclusion, which the jury were justified in reaching, that is, that proper warning signals were not given and suitable precautions were not taken by the defendant to protect the employés whose duties required them to cross this track. There is evidence for the defendant that signals were given by the swinging of lanterns; and here again the plaintiff's testimony that these were far to the east, where the coupling was being done, and so not visible from the disabled cars near the toolhouse, raises a question for the jury as to the sufficiency of the warnings; and again the plaintiff is aided by the defendant's witness Kilpatrick, who testified that the distance was at least a quarter of a mile, so far away that the lights "could not be seen."

The testimony of the conductor in charge of the freight train is significant:

"Q. And when you shift a car in on that track, you ain't particular as to where it stops? A. No, sir. Q. Whether or not— Tell the jury whether or not they do not often run up and strike these crippled cars lying up on the track? A. Yes, sir. Q. You never paid any attention to crippled cars did you? A. No; I have worked there by that track for the last two years. During all that time that has been the custom. Q. Shunt cars in on that track? A. Yes, sir. Q. And tell the jury whether or not the cars, as thrown in on that track, would often, or not, strike these crippled cars up on the track? A. Yes, sir; they would. Q. And jam them back? A. Yes, sir."

If this reckless manner of shifting the cars had been known to the plaintiff, it might be held that he was guilty of contributory negligence as a matter of law in crossing as he did; but there is no evidence that he did know it. He testified that he never saw the cars on track No. 13 move but once, and on that occasion warning was given. Here there is another conflict in the evidence, which raised a question for the jury. Certain employés of the defendant testified that the cars were moved often; but knowledge of the practice, if it existed, is not traced to the plaintiff. In crossing as he did he was following the custom of his associates, who had, it would seem, no knowledge of imminent danger. The plaintiff had a right to assume that cars which the defendant had seen fit to designate as disabled and crippled would remain stationary until proper warning of intended movement had been given. The defendant's evidence that the cars on track No. 13 were moved frequently, at best, shows that these movements were at irregular and uncertain intervals, and, if true, furnishes an additional reason why the defendant should have safeguarded its employés by some system of rules, regulations, signals, and warnings. The defendant maintained a constant invitation to cross the track at that

point, and not only failed to make crossing reasonably safe, but rendered it extremely dangerous.

In view of all these facts, we do not think the plaintiff was chargeable with contributory negligence as a matter of law, but that that question, as well as the question of the defendant's negligence, was for the jury. There was sufficient evidence to sustain the verdict, and the judgment and order should be reversed, and the verdict reinstated, with costs. All concur.