## NORTHERN PAC. RY. CO. v. BAXTER.

(Circuit Court of Appeals, Ninth Circuit. May 22, 1911.)

No. 1,901.

MASTER AND SERVANT (§§ 286, 289*) —INJURIES TO SERVANT—RAILROADS—OPERATION — PERSONS NEAR TRACK — NEGLIGENCE — CONTRIBUTORY NEGLIGENCE.

In an action for injuries to a servant while walking along the side of a switch track by being struck by a car shoved along the track from the rear by means of a flying switch, evidence *held* to require submission to the jury of defendant's negligence and plaintiff's contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. §§ 286, 289.*]

In Error to the Circuit Court of the United States for the Western District of Washington, Western Division.

Action by Thomas Baxter against the Northern Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Geo. T. Reid, J. W. Quick and L. B. Da Ponte, for plaintiff in error.
Charles O. Bates, Newton H. Peer and Charles T. Peterson, for defendant in error.

Before GILBERT and MORROW, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge. This is a writ of error from a judgment of the Circuit Court awarding damages to the defendant in error on account of personal injuries received, resulting from the alleged negligence of the plaintiff in error in the operation of its engine with car attached in making what is known in railroad parlance as a "flying switch" with the car. The accident occurred near the depot at Tenino, Wash. The general course of the railroad as it passes that point is north and south. The company has two tracks east of the depot paralleling each other, one the main and the other a passing track. It also has a house track running on the west of the depot and forming a junction 420 feet south thereof with the main track. One hundred twenty feet still further south a storage track runs off from the main track southward. Across the house track from the depot, and about 70 feet distant therefrom, was situated a hotel and saloon, and many persons were accustomed to cross and recross to and from the saloon and depot. Situated a half mile south of Tenino, on the line of the railroad, is a large sawmill, and the employés of that concern, as well as other persons, habitually traveled to and from Tenino

upon and along the main and passing tracks of the company, and upon and along the house track from its junction with the main track to the depot and hotel and saloon. It is in testimony that as many as 20 or 30 persons or more traveled daily along and upon these tracks. Plaintiff testified in brief that on the morning of the accident, namely, July 3, 1908, he was working with a bridge crew repairing a bridge about a mile to the north of Tenino; that, the boarding cars having been left on the storage track, on quitting work at noon the men came in through Tenino and went to the cars for dinner; that, after dinner was over, plaintiff picked up a spud, being a timber used for prying, which was lying along the way, and started back towards Tenino; that he came to the house track 85 or 90 feet from its junction with the main track, and started to walk along it, having the spud on his shoulder, and was hit by a box car which came up behind him; that he looked and saw no one on the car, or in charge of it; that the point where he was struck was about 125 feet from the junction with the main track; that, when he left the boarding car, he saw Hicks, a brakeman, near the switch; that he also saw an engine with a car in front of it standing on the main track about 120 feet south of the junction with the house track, and McMichel, another brakeman, near the engine; that, when he entered upon the track, he looked back, then looked back again after he had proceeded a short distance, and both times saw the engine still standing beyond the switch, and that shortly thereafter he was struck by the car; that he had not walked over 45 feet along the track when he was struck, and about 15 feet when he looked back the second time; that he was walking outside of the west rail and within about 24 inches thereof; that the car struck him and the timber in such a way as to throw his arm upon the track, whereby he received the injury of which he complains; further, that there was no signal or other warning given of the approach of the car.

A flying switch was made in running the car that injured the plaintiff upon the house track; that is, the car being in front of the engine, the engine, drawing the car with it, was propelled rapidly backward, and when in motion the car was cut loose, the engine was allowed to pass the switch, and the switch was turned so that the car, by its own momentum, ran upon the house track, which was slightly downgrade, so that the car ran on until it was stopped by coming in contact with other cars standing on the track. While the plaintiff and another witness testified that they saw no one on the car, there was testimony, upon the other hand, that one of the switchmen boarded the car after he had set the switch, but that it struck the plaintiff before he could reach the brake. It also appears that, while people were accustomed to pass and repass along and upon the house track and the main track of the company, there were well-beaten paths outside of the tracks, and especially was there one along the west side of the house track.

Two questions are presented for our consideration: First, whether there was evidence sufficient to carry the case to the jury as it respects the alleged negligence of the defendant company; and, second, whether the plaintiff was guilty of contributory negligence which as a matter of law will prevent his recovery.

As to the first question, there can scarcely be serious controversy. A flying switch was made, and there was evidence tending to show that the box car in question was allowed to run on a downgrade unattended and without a lookout, and without any signal or warning being given for admonition to any one who might be upon the track. True, these facts were disputed, but it was a matter for the jury to say whether they were true or not. The vicinity was so much used by the public, persons walking and passing across, upon and along the tracks, that a duty was imposed upon the railway company to exercise reasonable care and precaution to protect them against injury. Or, at least, it was properly left to the jury to determine what was the usage of the public in that regard, and consequently to determine whether the plaintiff was a licensee, with permission of the railway company to use the track as a pathway; and, the jury having found against it on that issue, it follows that it was incumbent upon the company to observe reasonable care in the operation of its trains and cars with reference to the presence of persons on and along its tracks.

As to the other contention, we think this case is controlled by Thompson v. Northern Pac. Ry. Co., 93 Fed. 384, 35 C. C. A. 357. There the company had constructed a bridge on a street in the city of, Tacoma at its intersection with another street. On this bridge were laid the railroad tracks. People were accustomed to travel across the bridge and along these tracks with the knowledge, acquiescence, and license of the railroad company, notwithstanding they had a convenient way for passing under the bridge. It was while the plaintiff was proceeding across this bridge that he was run upon by an engine, which approached from the rear and injured him. The evidence tended to show that no signal of its approach was given by those in charge of the engine. Upon this state of the facts, briefly narrated, the court held that the question of contributory negligence was one for the jury, saying, among other things:

"It is undoubtedly true that if the engineer saw the plaintiff in error, and had given warning of his approach, he would have had the right to assume that the plaintiff in error would get out of the way. But it seems that the engineer did not give any warning of the approach of the engine. Certainly, there was testimony to show that he did not. There was also testimony tending to show that the plaintiff in error, just before going upon the bridge, looked back to see if there was any train or engine approaching; that the track could be plainly seen for at least 600 or 700 feet, and that no train or engine was in sight. He knew, as has been stated, that the place was a dangerous one; but those in charge of the engine also knew that people were in the habit of walking along the railroad tracks over the bridge. It was therefore the clear duty of the engineer to keep his eyes open and his face to the front. It was equally the duty of the plaintiff in error to keep his eyes open, and a careful watch in both directions. Manifestly he could not look in opposite directions constantly. Whether or not he exercised the degree of care required of him by the law ought, we think, to have been left to the jury, under appropriate instructions in respect to contributory negligence."

So there is testimony here tending to show that the railway company shunted this car by the switch and upon the house track, without an attendant or lookout upon it to give warning or to stop it, and thus allowed it to run down the track of its own accord, whereby the plaintiff was hurt. The plaintiff says he looked twice to ascertain

if the engine was approaching, having seen it previously beyond the switch, and supposed there was no danger. While there is reason to doubt the accuracy of his statement in this regard, yet it was a matter proper for the determination of the jury. Reasonable minds at least will differ as to the fact, and hence the court cannot say as a matter of law that plaintiff did not look as he says he did.

The judgment of the Circuit Court will therefore be affirmed.