St. Louis National Stock Yards v. Ollie Burns, Adm'x, etc.

1. MASTER AND SERVANT—*Duty of the Master to Furnish Reasonably Safe Machinery, etc.—Railroads.*—The law which requires a railroad company to furnish reasonably safe machinery and to keep its tracks, engines, cars and appliances in reasonably safe repair, has no application to such engineering problems as are involved in the construction of its yards.

2. RAILROADS—*Risks Assumed by an Employe Who Enters the Service of a Railroad Company in Its Yards.*—A person who enters the service of a railroad company in any work connected with the making up or moving of trains in its yards, assumes the risks of the condition of things necessarily attendant upon the making up and moving of trains in such yards.

- 3. ORDINARY CARE—*A Requisite of a Recovery.*—In an action for damages resulting from the death of an employe of a railroad company, before recovery can be sustained, it must be shown that the deceased was, at the time of the injury which caused his death, in the exercise of due care and caution for his own safety.

Trespass on the Case.—Death from negligent act. Appeal from the City Court of East St. Louis; the Hon. SILAS COOK, Judge, presiding. Heard in this court at the August term, 1900. Reversed with a finding of facts. Opinion filed March 11, 1901. Rehearing denied.

GEO. F. McNULTY and PERCY WERNER, attorneys for appellant.

F. C. SMITH and M. MILLARD, attorneys for appellee.

MR. PRESIDING JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in case, in the City Court of East St. Louis, by appellee against appellant, to recover damages resulting from the death of William Burr, husband and intestate of appellee. Trial was by jury. Verdict and judgment in favor of appellee for $5,000.

The declaration charges, in substance, that appellant was conducting certain stock yards, and had in its use for that purpose divers railway tracks, locomotive engines, cars and trains; that appellee's husband was in appellant's employ

as a switchman; that it was his duty to assist other servants of appellant in operating a certain switch engine; that it was the duty of appellant to maintain railway tracks, engines and cars reasonably suitable for the use made of them, to furnish a sufficient number of competent servants to carry on its business with reasonable safety to its employes, and to provide and enforce suitable rules for the government of its servants while engaged in such work; that appellant, not regarding such duty, had in use two certain railway tracks which were too close together and therefore dangerous, failed to furnish a sufficient number of competent servants to handle and switch the cars and trains with safety, and failed to provide and enforce suitable rules for the government of its employes; and avers that in consequence of such negligence, the deceased, while in the exercise of due care and caution for his own safety, was struck by a train of cars carelessly and improperly driven by appellant and killed. To this declaration appellant pleaded not guilty.

The trial court instructed the jury that there was no evidence tending to support the charges in the declaration that appellant had failed to furnish a sufficient number of competent servants, or that appellant had failed to provide and enforce suitable rules. The state of the record shows that this instruction was fully warranted. The only remaining charges in the declaration are, that the tracks were too close together, and that the train which struck deceased was carelessly and improperly driven.

The two sets of tracks which are alleged to have been too close together were tracks of standard gauge, running straight and parallel with each other for a distance of 200 feet. The space between the tracks was six feet, three inches and a half. The space between the car onto the side of which deceased was hanging, and the passing car that struck him, was from eighteen to twenty-four inches. Deceased was thirty-eight years old, was an experienced switchman, had worked for appellant in the same capacity over the tracks complained of for about six months and the

tracks had sustained the same relative position for at least a month immediately prior to the injury. The injury occurred in broad daylight and there was nothing to obstruct the view of the approaching train.

There were but two eye-witnesses to the injury, Joseph J. Kropp, the fireman on the engine of deceased's crew, and one John Evans, a government employe who supervised the cleaning and disinfecting of stock cars. Mr. Kropp was a witness on behalf of appellee, and testified in substance:

"I knew Burr; he was working with us. I was in the service of the St. Louis National Stock Yards when he was killed, and still am; was firing one of the engines; was on engine No. 2, with Mr. Burr's crew. I saw Burr killed; a Swift refrigerator car struck him. The car was being handled by the other crew on the adjoining track. But one car was attached to our engine, and he was riding on that car. It was a barrel car, high and long. I saw the Swift refrigerator car strike him as he was on the side of the barrel car; I saw him when he jumped on; it was just that quick (snapping his fingers); he was knocked off as soon as he jumped on. I did not notice the other cars coming. There was nothing to prevent me and Burr from seeing these cars as they came down on that adjoining track; the tracks were parallel to each other. In my judgment there were two feet or eighteen inches between the cars. I never measured the distance between the tracks. When Burr was knocked off he was hanging out over the car, the full length of his arm, standing on the stirrup; he was looking straight toward the car; he was not looking in the direction in which the car was going. He was on my side of the engine. There was nothing to prevent him from jumping on the engineer's side. He could have jumped up there, of course, and there was a ladder on the rear end of the car and he could have jumped up there. There was nothing between our train as it went west with that car, and the other train as it came east, to prevent Burr from seeing it as it came up; the tracks were parallel along there; they were parallel for about 200 feet; they were straight and parallel, and the view was unobstructed. I hollered to my engineer. I saw of course that he was going to be struck, and of course I hollered to the engineer. I saw it because the two cars were passing one another, and he was hanging out so far; he could have straightened himself up

and escaped being hurt; there was room enough at the time; he could have straightened himself up and been clear. He did not see the other car, I guess. If he had been on the lookout, looking ahead, he could have straightened himself up, simply kept along the side of the car and allowed the other car to pass behind him, without touching him; there was ample room for that."

The account given by this witness is more favorable to appellee than that of the other eye-witness.

In C. & E. I. R. R. Co. v. Driscoll, 176 Ill. 330, it is said :

"The manner of constructing a railroad is an engineering question. A railroad company can not be required to adopt any particular method of construction. * * * Public policy does not require courts to lay down any rule as to the manner of construction of railroads. * * * It is not a question for a court to submit to a jury whether the manner of construction of a railroad is proper or not."

And in Randall v. B. & O. R. R. Co., 109 U. S. 478, it is said :

"A railroad yard where trains are made up, necessarily has a great number of tracks and switches close to one another, and any one who enters the service of a railroad company in any work connected with the making up or moving of trains, assumes the risks of that condition of things."

The law which requires a railroad company to furnish reasonably safe machinery, and to keep its tracks, engines, cars and appliances in reasonably safe repair, has no application to such engineering questions as the one involved in this case. We are of opinion that the death of appellee's intestate was the result of dangers and risks incident to the business in which he was engaged.

And further, to entitle appellee to recover she must show by a preponderance of the evidence that her intestate was at the time and on the occasion of the injury which caused his death, in the exercise of due care and caution for his own safety. He could not have been in the exercise of due care and at the same time guilty of negligence which contributed to the injury. Appellee's counsel contend that this was a question of fact for the jury. In City of Belle-

ville v. Hoffman, 74 Ill. App. 503, we discussed at some length as to when negligence and due care are questions of fact for a jury and when questions of law for the court, and will content ourselves with referring to that case, and not stop to rediscuss that subject here. For the purposes of this case it is sufficient to say, as we did in I. C. R. R. Co. v. Batson, 81 Ill. App. 142:

" Where there is no evidence tending to show care and caution, and no excuse or reason appears for their absence, then the allegation in the declaration of due care and caution is not proved. Being a material allegation and not proved, the instruction to find for appellants should have been given."

The due care and caution required of appellee's intestate, by the law, was commensurate care and caution, and we are unable to find any evidence in this record, or to find any fair inference from any evidence, tending to show that deceased exercised such care and caution, nor does any reasonable excuse for a failure to do so appear. The trial court erred in not granting appellant's motion to exclude all the evidence and direct the jury to find appellant not guilty. The conclusions thus far reached render it unnecessary and unprofitable to discuss the many remaining interesting questions raised. The judgment of the Circuit Court is reversed.

**Finding of Facts.** —The court finds as facts in this case, that appellee's intestate came to his death as the result of dangers and risks incident to the business in which he was engaged. And further, finds that at the time and on the occasion of the injury which caused his death, he was not in the exercise of due care and caution for his own safety, and that his failure to exercise such care and caution contributed to the causes which produced the injuries of which he died.