THEODORE DOLGE v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

February 26, 1909.

Nos. 16,041—(209).

**Railway—Split Switch.**

The proper throw necessary for a split switch, in railway construction, is an engineering proposition, to be determined by properly qualified engineers, and the verdict of a jury, or the opinion of judges, cannot be substituted therefor.

**Same—Negligence.**

It having been shown that a throw of five inches was the standard adopted and recommended by the American Railway, Engineering, and Maintenance of Way Association, and that for all railroad purposes a throw of from four to five inches was safer than a less distance, *held*, respondent was not guilty of negligence in maintaining a split switch with a throw of four and three fourths inches, although a switchman's foot might be more readily caught therein than if the distance had been less.

Action in the district court for Hennepin county by the administrator of the estate of Charles A. Dolge, deceased, against defendant railway company and John Schmidt, one of its section foremen, to recover $5,000 for the death of the intestate. The complaint alleged that defendant negligently furnished the intestate with a road bed containing a split switch, the point of which was so far removed from the main rail that it constituted a trap for the feet of its employees, including the intestate, and permitted his feet to catch therein and did hold them and by reason thereof he was run down and killed. The answer of the defendant company contained a general denial and allegation that the injury was caused solely by the negligence of intestate

1 Reported in 119 N. W. 1066.

and the risks incident to the employment. The case was tried before Frederick V. Brown, J., who directed a verdict in favor of defendant Schmidt. The jury returned a verdict against defendant company for $3,500. From an order granting defendant company's motion for judgment notwithstanding the verdict, plaintiff appealed. Affirmed.

*Larrabee & Davies,* for appellant.

*Charles W. Bunn* and *Emerson Hadley,* for respondent.

LEWIS, J.

Appellant's son was a switchman in the employ of respondent railway company at its yards in the city of Minneapolis, and was killed on the track while engaged in the performance of his duties. Negligence is based upon the ground that respondent maintained a defective split switch, in that the movable point of the switch, when open, was at a greater distance than necessary, which condition permitted the foot of the switchman to become caught and held. Appellant recovered a verdict, and the trial court ordered judgment for respondent notwithstanding the verdict.

It was shown at the trial that the distance between the point of the switch, when open, and the main rail was four and three fourths inches, and appellant attempted to prove that three and one half inches was the extreme limit necessary. It being shown that the width of a switchman's shoe exceeds three and one half inches, it was claimed that the deceased could not have had his foot caught in the space, had the switch in question been maintained at a distance of three and one half inches. It was proven by respondent, and the fact was not controverted, that several years ago the American Railway, Engineering, and Maintenance of Way Association adopted five inches as the standard throw of split switches, and that it has been the purpose of respondent and other railway companies to conform to this standard from time to time as new switches have been installed. The evidence established beyond controversy the fact that no uniform standard had been installed at the time of the accident, and that the intervening space between the point of the switch and the main rail varied from three and one half to five inches.

It was also shown that the space of three and one half inches at least was necessary, even when the rails and the switch, the car wheel and axles, and the entire equipment is new and in perfect condition. The flange of the ordinary car wheel is one and one half inches thick. Conceding that the flanges may be worn for the space of an inch before the wheel is discarded, an additional space of one inch would be required to allow for the play of wheels in that condition. So three and one half inches at least would be required, assuming that the axles and the switch bearings were in perfect condition. By competent railroad authority it is deemed wise to increase the space as far as possible, in order to guard against the possibility of striking the point of the switch when loose or worn wheels and equipment pass over it. Ample space is the more necessary from the fact that in railroad operations each company is obliged to receive and transfer cars from all parts of the country.

The fact that at the time of the accident some switches with a three and one half inch throw were in use by respondent company, and that a majority of the switches examined by appellant's witnesses were less than the five-inch standard, does not of itself establish negligence in maintaining the particular switch under consideration at four and three fourths inches. The question is not to be determined from the standpoint alone of the greatest safety to switchmen, or others, who have occasion to walk on the tracks. In constructing and operating railroads, every question which enters into the problem must be considered, and if those competent to judge of such matters have decided that safe railroading requires the maintenance of a space from four to five inches, no negligence can be predicated upon the adoption of such a standard. It cannot be assumed that the association mentioned inconsiderately adopted the five-inch standard. On the contrary, it must be assumed that such action was based upon thorough investigation as a result of experience and must be accepted, so far as the courts are concerned. Suppose respondent had adopted three and one half inches as its standard, and an accident should occur upon such a switch on account of a badly worn wheel or imperfect equipment; would not negligence be charged for maintaining a switch with too narrow a space?

It is the general rule that the method of constructing a railroad is an engineering question. Tuttle v. Detroit, G. H. & M. Ry., 122 U. S. 189, 7 Sup. Ct. 1166, 30 L. Ed. 1114; Illick v. Flint, 67 Mich. 632, 35 N. W. 708; Boyd v. Harris, 176 Pa. St. 484, 35 Atl. 222; Mobile v. Healy, 100 Ill. App. 586. These cases are referred to and distinguished in Clay v. Chicago, M. & St. P. Ry. Co., 104 Minn. 1, 115 N. W. 949. See also Chicago, M. & St. P. Ry. Co. v. Riley, 145 Fed. 137, 76 C. C. A. 107; St. Louis v. Burns, 97 Ill. App. 175. This is the controlling question in the case, and the conceded facts bring it within the rule.

Affirmed.