# GAWEN W. GIBSON v. CHICAGO GREAT WESTERN RAILROAD COMPANY.[1]

February 9, 1912.

Nos. 17,418—(227).

**Accident at street crossing — questions for the jury — damages.**

Plaintiff's foot was caught and held in the space between the planking and a rail of defendant's tracks at a street crossing, and was run over by an engine. It is *held:*

1. Whether defendant should have filled or blocked the space underneath the ball of the rail was not primarily a problem in engineering for the solution of defendant's officers and engineers; but whether defendant was negligent in this respect was, on the evidence, a question of fact for the jury.

2. Whether the engineer, in charge of the engine that ran over plaintiff, used reasonable care to stop his engine after discovering that plaintiff's foot was caught, was a question for the jury, and the evidence was sufficient to sustain the verdict on this point.

3. There was no prejudicial error in the rulings on the trial.

4. The damages are not excessive.

Action in the district court for Ramsey county to recover $25,000 for personal injuries. The complaint, among other matters, quoted in full section 2054 of the Annotated Code of Iowa, 1897; Acts of 1909, c. 219; and section 2071 of the Supplement to the Code, 1907, as amended by Acts 1909, c. 124. The answer, after alleging that the accident was caused solely through plaintiff's negligence, admitted that the statutes quoted in the complaint were enacted prior to the accident and had not been repealed, but alleged that the Constitution of Iowa provided: "All laws of a general nature shall have a uniform operation; a general assembly shall not grant to any citizen or class of citizens privileges or immunities which upon the same terms shall not equally belong to all citizens." The answer further alleged that under the Iowa common law in order to recover

[1] Reported in 134 N. W. 516.

for another's negligence complainant should prove absence of negligence on his part. The reply was a general denial. The case was tried before Olin B. Lewis, J., and a jury which returned a verdict in favor of plaintiff for $12,500. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Briggs, Thygeson & Everall,* for appellant.

*Samuel A. Anderson* and *A. F. Storey,* for respondent.

BUNN, J.

Plaintiff was the conductor of a freight train of defendant that reached Dyersville, Iowa, during the morning of December 6, 1910, and stopped at the water tank, just east of a street crossing, which was less than a block east of the station. His engine was out of repair, and it became necessary to move it to a side track west of the station. When this was done, another engine was to move the train from the main track to a side track, where it was to remain until the first engine was repaired. Plaintiff watched to see that his engine was put away properly, and in so doing walked back and forth between the water tank and the station. As he was walking east on the main track at the street crossing in company with the trainmaster, he knew that engine 600 was coming from the west to couple to his train. The trainmaster called to him to "Look out, Gib, there comes that engine!" Plaintiff turned, saw that the engine was approaching, and took a step to get off the track, when his right foot went down in the space between the planking and the north rail, and was caught and held there. The trainmaster gave the engine a stop signal. Plaintiff made every effort to extricate his foot, but was unable to do so. The trainmaster pulled him to one side, and his foot was run over by the pony truck wheels of the engine. The injury resulted in an amputation between the knee and the ankle.

This action was to recover damages for the injuries so received. The charges of negligence were substantially these: (1) The crossing was unsafe, in that the space between the rail and the planking was such that the foot of any passer-by or a person walking along

the track would be likely to step into the space and underneath the ball of the rail, and there be caught and held. (2) The engineer on the engine that ran over plaintiff failed to use reasonable care to avoid the accident after knowledge that plaintiff was caught. The trial court submitted these issues to the jury, which found a verdict in favor of plaintiff in the sum of $12,500. Defendant moved for judgment notwithstanding the verdict or for a new trial, and appealed from an order denying such motion.

1. Defendant's first contention is that it was not for the jury to decide whether defendant was negligent in leaving the space between the plank and the rail unfilled, for the reason that this was purely an engineering problem. The crossing was at grade, and over the principal street of Dyersville, a city or village of a population of over three thousand. The tops of the rails were practically on a level with the planking on both sides. The space between the ball of the rail and the plank was two and one half inches. All of the space underneath the ball of the rail was open, there being no blocking or filling of any kind. There was evidence from experts as to a custom of filling or blocking these spaces, as well as expert evidence of a contrary custom. The trial court held that no negligence could be found from the width of the space, but left it to the jury to say whether ordinary care required defendant to fill in or block the space underneath.

It is quite plain to us that the situation constituted a danger both to employees and to persons crossing the tracks, and that the evidence made a case for the jury, unless we sustain defendant's point that this was purely a problem in engineering. There is no doubt that railroad companies must consider the safety of passengers and those riding on their trains, as well as the safety of employees working upon the tracks or of people crossing them; and if it fairly appeared that filling or blocking the spaces between rails and planking at street crossings was dangerous to passengers or employees riding on trains, it would be right to say that it is for the officers and engineers of the railway company to determine the safest course, basing their decision on their judgment and past experience.

117 M.—10.

This doctrine has been applied to a curve in a track (Tuttle v. Detroit, G. H. & M. Ry. 122 U. S. 189, 7 Sup. Ct. 1166, 30 L. ed. 1114), to blocking frogs (Gilbert v. Burlington, C. R. & N. R. Co. 128 Fed. 529, 63 C. C. A. 27), and to various other conditions.

In Dolge v. Northern Pacific Ry. Co. 107 Minn. 242, 119 N. W. 1066, 26 L.R.A.(N.S.) 600, the question was as to what throw was necessary for a split switch, and this court decided that the question was not to be determined from the standpoint alone of the greatest safety to switchmen or others who have occasion to walk on the tracks, but "that in constructing and operating railroads every question which enters into the problem must be considered, and if those competent to judge of such matters have decided that safe railroading requires the maintenance of a space from four to five inches, no negligence can be predicated upon the adoption of such a standard."

In Clay v. Chicago, M. & St. P. Ry. Co. 104 Minn. 1, 115 N. W. 949, the question was as to whether a sufficient clearance distance was left between a freight platform and the track, and defendant insisted that this was primarily an engineering proposition. This court referred to the Tuttle case and others, but held that the case before it involved no engineering problem of technical character. The late Mr. Justice Jaggard said in the opinion: "In general, a railroad has the right to construct its own road—to solve its own engineering problems in accordance with its own views. * * * It by no means follows that it may disregard rules of law for the protection of the public, passengers, or employees."

In the case at bar rules of law required that the crossing be safe for the protection of the public, as well as employees. In the matter of the distance between the rail and the plank, the principle contended for can well be applied, as modern large engines may require that space; but in the matter of blocking and filling the space underneath we are unable to see any problem for engineers. It is true that defendant's witnesses testified that if the space were filled, either with dirt or a rail, objects might fall upon the filling and cause derailment, and that a filled crossing is not as safe, in general, as an open one; but this evidence does not impress us as making this an en-

gineering problem, or anything more than a question of fact for a jury. We cannot escape from the idea that it would have been easily possible to guard against such an accident as this, without thereby endangering the safety of passengers, employees, or property, and without interfering with the operation of trains. The space underneath the ball of the rail was clearly useless, and blocking or filling would have been a simple matter. We think the question was for the jury.

2. Defendant argues earnestly that there was no competent evidence tending to show negligence in the operation of the engine. The only negligence submitted to the jury in this connection was the engineer's failure to stop the engine before it ran over plaintiff's foot after receiving the stop signal. Plaintiff testified that the engine was at least one hundred feet away when his foot was caught, and that it was running at a speed of four or five miles per hour. If the jury was warranted in believing this, then, in view of the evidence that the engine could have been stopped within thirty feet, a finding was justified that the engineer did not do all that he ought to have done toward stopping his engine. The entire question is whether plaintiff's evidence as to the distance away of the engine and its speed was worthy of belief. We are unable to say that it was not.

Estimates of distance and speed are always more or less unreliable; but plaintiff was as much entitled to his guess as was the engineer or the trainmaster, who testified for defendant. He was in as good a position to make an estimate as any of the witnesses, and it was for the jury to decide whose testimony should be believed. In short, the whole question was peculiarly one of fact, and, while it must be conceded that there was much testimony tending to show that the engineer did all he could do to stop his train, we cannot hold that it was conclusive, or that the trial court abused its discretion in refusing a new trial.

3. It is claimed that the complaint did not allege as negligence defendant's failure to fill or block the space, and therefore that the evidence should have been excluded, and the jury not permitted to base a verdict on negligence in this respect. The complaint alleges

substantially that the space was left unfilled, but does not charge that this was negligence. This point is too technical. In view of the entire complaint, and the nature of the objection made when the evidence was offered, we cannot sustain defendant in the contention made in this regard.

It is claimed that the trial court in its charge adopted an erroneous standard of care, when it said that it was defendant's duty to construct and maintain the crossing in as safe a condition as it was "practicable and feasible" to do. But the court repeatedly told the jury that reasonable care was all that was required, and correctly defined reasonable care. Taking the charge as a whole, it is clear and correct, and the jury could not have been misled.

It is also contended that it was error to refuse to instruct the jury on the question of assumption of risk. We think that, under the Iowa statutes pleaded and in evidence, the trial court was correct in holding that assumption of risk was not a defense. In saying this we do not intimate that without these statutes it would have been error to refuse the instruction on this point.

Errors are assigned as to the admission of testimony and as to the refusal of the court to give certain instructions requested. We hold that there was no prejudicial error in any of the rulings.

5. Are the damages so excessive as to indicate passion or prejudice? The verdict is a large one. The amount is greater than we would have awarded. But the amount was not so exorbitant as to shock the sense of the trial court, and the question before us is still narrower: Is the amount so large that it clearly appears therefrom that the trial court abused its sound discretion in permitting the verdict to stand?

This court has not and cannot set a standard as to the limit of damages to be awarded for the loss of an arm or a leg.

In the case at bar we have an award of $12,500 for the loss of a leg below the knee, without unusual suffering and with as good a result as possible. Plaintiff was thirty-nine years old. His career as a railroad brakeman and conductor was ended by the accident. On the whole, we feel unwilling to say that the trial court abused its

sound discretion in refusing to set aside or reduce the verdict as excessive.

We have not overlooked defendant's point that, under the comparative negligence statute of Iowa, in case plaintiff is guilty of contributory negligence, the damages should be diminished by the jury in proportion to the amount his negligence contributed to cause his injuries. It certainly did not conclusively appear that plaintiff was guilty of any negligence, and we are not justified in assuming that the jury found that he was negligent.

Order affirmed.

PHILIP E. BROWN, J., being absent on account of illness, took no part.