LILLIAN THAYER v. WALKER D. HINES, DIRECTOR
GENERAL OF RAILROADS, AND ANOTHER.[1]

March 5, 1920.

No. 21,644.

**Master and servant — knowledge of switchmen — question for jury.**
1. The evidence is sufficient to raise a question of fact as to whether
a railroad switchman, who was throwing a switch, knew or had reason
to believe, that a car, which was standing near by, was about to be
moved.

**Master and servant — knowledge of switchman — question for jury.**
2. Where only one engine is moving in a railroad yard, the rules for
determining negligence toward a member of the engine crew, are sub-
stantially the same as they would be in any other locality. The evidence
is such as to raise an issue of fact, as to whether defendant's employees
were negligent, in moving, an engine upon plaintiff's decedent, without
warning.

**Contributory negligence — assumption of risk.**
3. Neither contributory negligence nor assumption of risk was con-
clusively shown.

Action in the district court for Hennepin county to recover $15,000
for the death of plaintiff's intestate while in defendant's employ. The
amended answer alleged that the death of decedent was the direct result
of his negligence and that he fully appreciated the risks inherent in and
attaching to his employment. The case was tried before Molyneaux, J.,
who denied defendant's motion for a directed verdict, and a jury which
returned a verdict for $3,150. Defendant's motion for judgment not-
withstanding the verdict was denied. From the judgment entered pur-
suant to the verdict, defendant appealed. Affirmed.

*M. M. Joyce* and *D. C. Edwards,* for appellant.

*George T. Simpson, John F. Dahl* and *Eugene S. Bibb,* for respondent.

HALLAM, J.

1. Louis Thayer was a member of a switching crew of defendant

[1]Reported in 176 N. W. 752.

Railway Transfer Company in its yards in Minneapolis. The other members of the crew were the engineer and fireman, the foreman, Joseph, and switchmen, Hearn and Palmatier. It was 7:40 p. m. in March and it was dark. The crew was about to quit for the day. Their last work had been to distribute a string of about 14 cars. This work had been completed, except that one car had been permitted to stand afoul of a switch. The engine and crew were in the northeasterly part of the yard. The roundhouse was in the southeasterly part of the yard, but to reach it they were obliged to go to the westerly end of the yard, then wye and go east over other tracks on the southerly side of the yard. In this easterly course it was necessary that two switches be thrown. At the conclusion of the day's work, Thayer "most generally" threw one of them, known as "the short 1 switch." On the evening in question, after finishing in the northeasterly part of the yard, the engine, with the crew all on board, started southwesterly on the track, and in the direction they would go if going to the round house. When about opposite the switch Thayer was to throw, Thayer and Palmatier dropped off the engine and each went to his respective switch. Thayer's switch was on the track next south of the track, numbered 1, on which stood the box car above mentioned, and east of the box car. The switch stand comes within three feet eight inches of track 1 and within a foot of a box car passing on that track. While Thayer was standing near his switch, and either on or near to track 1, the engine kicked the box car to the east, and it struck Thayer and injured him so that he died. Plaintiff, as administratrix of his estate, sued for damages and was given a verdict. Defendant appeals.

The question whether Thayer had been advised, or had reason to know, that this box car was to be moved, is of great importance. His conduct would indicate that he did not know it. The position in which he stood would indicate that he did not know it. There had been nothing in the movement of the engine up to the time he left it that would advise him of it. It pursued the course that it would have pursued had the crew been going to the round house, and, except for the box car, there was apparently nothing more to do. There was no evidence that Thayer knew that the box car was afoul the switch, or that he knew of the purpose to again move it, except the following: Palmatier testified that, as the crew started southwesterly, the foreman, Joseph, was standing on one end of

the foot-board and Thayer on the other, and that Joseph said: "We would kick that car in on 1 and go to the house." When asked if he knew whether Thayer heard this he said: "I certainly don't." Palmatier also said: "It seems·to me that I repeated the order to kick that car in on short 1 and go to the house, just in an off-hand way   *   *   *.   That is my impression only   *   *   *   it was no part of my business to repeat the order."

We are of the opinion that the evidence does not conclusively show that Thayer knew, or had reason to believe, that the car was to be moved, or that any one, at least other than Palmatier, thought he knew it. There is no evidence that the engineer had reason to believe that Thayer had been so advised.

2. The question arises then, Was there any evidence of negligence in pushing this car upon and over Thayer? The car was pushed ahead of the engine without light, signal or lookout. All hands apparently knew that Thayer or some one else must be at the switch and near the track on which the car was moved.

Defendant invokes the familiar rule that in a railroad yard, where engines are constantly moving to and fro, and all men employed about the yard know that moving trains and engines are liable to be encountered on any track at any time, there is ordinarily no obligation on the part of the engineer of a switch engine, to give warning of its approach to employees who are familiar with the operations of the yard. Beecroft v. Great Northern Ry. Co. 134 Minn. 86, 158 N. W. 800; Aerkfetz v. Humphreys, 145 U. S. 418, 12 Sup. Ct. 835, 36 L. ed. 758. We do not think this rule is applicable. It is not the mere fact that the employee is employed in a railroad yard that gives rise to this rule. It is not the multiplicity of tracks that gives rise to this rule, but the multiplicity of engines or-trains, and where there is but one engine operating in a railroad yard, the rules for determining negligence toward a member of the engine crew, are substantially the same in a railroad yard as in any other place. There were many tracks in this yard, but at that time only one engine, and there is no evidence as to any other cars. The situation·is not much different from what it would be in any locality with sufficient tracks to permit the movements that were in fact made. We think the evidence is such as to make the question whether defendant's employees·

were negligent in not warning Thayer, by light or signal, of the approach of the engine and· car, a question for the jury.

3. The question of contributory negligence is not difficult. Contributory negligence, if any, would only reduce the damages. Laws 1915, p. 253, c. 187; 35 U. S. St. c. 149. But contributory negligence was not conclusively shown. If Thayer knew the car was to be moved in his direction, his negligence would be reasonably clear, But if he did not, and the jury doubtless so found, his negligence was fairly a question of fact.

If Thayer was not aware of the proposed movement of the box car, he did not as a matter of law assume the risk of danger therefrom.

Judgment affirmed.