KATHERINA WEIRETER, AS EXECUTRIX OF THE ESTATE
OF GEORGE WEIRETER, DECEASED v. GREAT NORTHERN
RAILWAY COMPANY AND ANOTHER.[1]

July 16, 1920.

No. 21,847.

**Railway — death of watchman from bumping cars in customary way.**

. 1. Plaintiff's testate, a watchman in a railroad switch yard, while
stepping over the rails immediately in front of 17 cars standing upon
one of the switch tracks, was killed when 6 cars, that were
shunted or kicked in at the other end of the standing cars, bumped
against the latter so that the two nearest decedent parted from the
other 15, and moved forward from 8 to 12 feet, struck down and ran
upon him. The accident occurred in the daytime. The evidence ad-
duced by plaintiff disclosed that a brakeman was riding upon the cars
kicked in; that, though the bell had not been rung nor the whistle
sounded upon the engine that kicked the cars, it was not customary so
to do, and that the cars were not sent in at excessive speed but in the
usual mode. Upon this state of the evidence the court did not err in
directing a verdict for defendant.

**Negligence — act done in customary way.**

2. When a plaintiff's own case shows that the act of a defendant, al-
leged to have been done negligently, was done in the usual and cus-
tomary way, the charge of negligence is not sustained, unless it can be
said that the common experience of the ordinary juror is competent to
fix the standard of care for the doing of the particular act involved.

**Railway — practice in switch yards.**

3. The proper mode of conducting switching operations in extensive
switch yards of a railroad company cannot be determined in the man-
ner stated.

Action in the district court for Ramsey county to recover $7,465 for
the death of plaintiff's testate while in the employ of defendant company.
The case was tried before Michael, J., who when plaintiff rested granted

[1] Reported in 178 N. W. 887.

defendant's motion for a directed verdict. From an order denying her motion for a new trial, plaintiff appealed. Affirmed.

*Patrick J. Ryan,* for appellant.

*M. L. Countryman* and *A. L. Janes,* for respondents.

HOLT, J.

Action to recover for a death caused by the alleged wrongful or negligent act of defendant. At the close of plaintiff's case defendant rested and moved for a directed verdict. The motion was granted. Plaintiff's motion for a new trial was denied, and she appeals.

George Weireter, plaintiff's testate, had been in the employ of defendant, a railway company, as a watchman in its switching yards at St. Paul for more than 10 years prior to February 11, 1919. The particular yard in which he then was stationed is known as the Como yard, extending westerly from the Rice street bridge toward Como avenue bridge. There are a number of tracks branching off from the main tracks and leads, running parallel thereto and in the general direction of east and west. The tracks are somewhat on a curve, so that when occupied by cars, a person standing between is unable to see but a short distance in either direction. The grade is slightly up in passing west. At about 10 o'clock in the morning of the date mentioned, there was a string of 17 cars set in on the westerly end of track known as No. 14. The track holds about 45 cars. Mr. Weireter had discovered the hasp broken on a car-door and called a car repairer to fix it. He was then about three car-lengths from the westerly end of the cars standing upon track 14, and on the southerly side between that track and No. 15. He undertook to point out the door to the repairer, walking westerly, the repairer slightly ahead. As they came to the end of the 17 cars, they started to cross the track to the northerly side. The repairer got across, but as Weireter stepped upon the track a string of 6 cars, shunted in from the east, bumped against the standing cars, so that the two westerly end cars, which were not coupled to the string, moved forward and struck him down, fatally injuring him. The men crossed the track one to three feet from the end of the car as it stood before moved by the impact. The 6 cars were set in on the track by what, in railroad parlance, is known

as a "kicking" movement. That is, the engine pushes them forward until they attain a sufficient momentum to go to the place intended, then the engine is uncoupled.

The negligence alleged against defendant was in making a flying switch along a curved track without warning to decedent; in not having any person on the cars to stop them or signal their approach; in not ringing the engine bell or sounding the whistle, and in driving the cars with unnecessary speed and violence against the standing cars. Secondly, in permitting the brakes in the cars in the string connected with the car that struck Weireter to become defective so that they failed to hold the cars when struck by the cars shunted in. Thirdly, in that the couplers of the cars involved in the accident were defective and failed to work when the impact came.

No evidence was offered touching any defect or want of repair in the brakes or couplers upon any car connected with the accident, and nothing further need be said on that subject.

We may also eliminate, as an element of negligence, the alleged absence of a person on the cars shunted in, for plaintiff's evidence is that a brakeman, Leary, rode on those cars. It was necessary to do so, in order to set the brakes when they stopped, or else they would run back east on account of the grade. Again, it is plain that even had there been a failure to have a person on the front end of the shunted cars, such failure could not have been found the proximate cause of this accident, for there is no evidence that such a person could have seen or could have warned Weireter. The only possible fault that suggests itself, in connection with setting in the 6 cars, is that Leary should have been at the brake when the cars were about to strike those standing, so as to be able to obviate or lessen the impact. But negligence in that respect was not pleaded, and no proof was directed thereto.

This leaves for consideration whether the omission to ring the bell or blow the whistle would authorize the jury to find actionable negligence, and also whether the speed at which the cars were sent in could constitute negligence.

The evidence is convincing that in the ordinary switching operations in this yard neither the engine bell was rung, nor the whistle sounded.

It seems that often 2 to 3 switch engines and crews were at work on each end of the yard, a yard estimated at about 1,600 feet in length. Should all keep ringing their bells the noise added to the exhaust of the engines and rattling of the cars, when slack runs in and out, would rather tend to confuse than be of service as a warning to the men about the tracks. Nor was it at all likely that deceased could have heard the bell, or, had he heard, that he could have known that any danger threatened him from the work that the engine in question, was then doing. There is ordinarily no obligation on the part of the engineer of a switch engine, to give warning of its approach to employees who are familiar with the operations of the yard. Beecroft v. Great Northern Ry. Co. 134 Minn. 86, 158 N. W. 800; Thayer v. Hines, 145 Minn. 240, 176 N. W. 752; Aerkfetz v. Humphreys, 145 U. S. 418, 12 Sup. Ct. 835, 36 L. ed. 758. Weireter had worked in this yard many years, and undoubtedly knew that it was not customary to give warning to employees of the movement of cars by such signals. His duty did not require him to work in between standing cars. He was not called upon to occupy perilous positions on the tracks when engrossed in his work. The switching crew had no reason to anticipate that he would attempt to cross the tracks so close to the standing cars that, if these moved because of the bumping which usually accompanies switching operations he would be in danger. Nor did the crew know that he was about to cross the track on which the cars were "kicked."

And as to the manner in which the cars were shunted the testimony, is that it was done in the ordinary way with no excessive force or speed; that when so done impact with standing cars may cause them to move. It is true that proving that something was done in the customary way does not necessarily prove that it was not done negligently. The usual way may be a negligent way. But, when a plaintiff shows that the act, upon which negligence is predicated, was performed in the customary way, the inference nearest at hand is that no negligence has been proven and the action must fail, unless he adduces some evidence by way of experts, or otherwise, that will justify the jury in concluding that, even though the act was done according to the usual custom, it was nevertheless negligently done, or unless it may be said that the common ex-

perience of the ordinary juror makes him competent to determine, without aid of evidence, whether or not the act was negligently performed.

Appellant has cited us to numerous decisions wherein it has been held that kicking cars in a railway switch yard, without a lookout to give warning, usually raises an issue of negligence for the jury. - Boos v. Minneapolis, St. P. & S. S. M. Ry. Co. 127 Minn. 381, 149 N. W. 660, involved cars shunted at night, without light thereon or any one upon them. Allen v. Wisconsin Cent. Ry. Co. 107 Minn. 5, 119 N. W. 423, was where the switching crew of one railroad, whose duty it was to make up a train, negligently shunted in cars to be attached when such crew ought to have known that another crew, which was to move the train to destination, had reason to believe the train was ready to be taken in hand by the latter to couple up the air brakes preparatory to starting. Howard v. St. Paul, M. & M. Ry. Co. 32 Minn. 214, 20 N. W. 93, was a case where a traveler was run down on a much frequented public street crossing at night. In Thayer v. Hines, 145 Minn. 240, 176 N. W. 752, the rule in Beecroft v. Great Northern Ry. Co. supra, was recognized as proper, but as having no application to the facts there appearing, because the injured party had no reason to apprehend that any car would be disturbed by the sole engine in the yard at that time.

The cases from other jurisdictions, called to our attention, are nearly all cases where the cars were kicked or shunted during darkness with no light and no look-out thereon, and, in some instances, in violation of both custom and rules. Colasurdo v. Central R. Co. (C. C.) 180 Fed. 832; Adams v. Cleveland, C. C. & St. L. Ry. Co. 149 Ill. App. 574; Hall v. Chicago & Alt. R. Co. 188 Ill. App. 95; Galveston, H. & S. A. Ry. Co. v. Karrer (Tex. Civ. App.) 70 S. W. 328; Galveston, H. & S. A. Ry. Co. v. Pendleton, 30 Tex. Civ. App. 431; Galveston, H. & S. A. Ry. Co. v. Berry, 47 Tex. Civ. App. 327, 107 S. W. 906; Missouri, K. & T. Ry. Co. v. Balliet, 48 Tex. Civ. App. 641; Houston, E. & W. T. Ry. Co. v. Boone, 105 Tex. 188, 146 S. W. 533; Norfolk & W. Ry. Co. v. Short's Adm. 171 Ky. 647, 188 S. W. 786.

In others, the injured party was doing work upon or about cars at rest, when cars were shunted against the latter, and the evidence indicated that the ones engaged in the operation ought to have known of the peril

to the one at work.   Hartley v. Chicago & Alt. R. Co. 197 Ill. 440, 64
N. E. 382;  Young v. Lusk, 268 Mo. 625, 187 S. W. 849;  Hunsaker v.
Ashland Coal & Iron Ry. Co. 181 Ky. 598, 205 S. W. 612.

In some, the injury occurred at a place where, to the knowledge of the
railroad company, persons were accustomed to cross over the tracks as if
it were a public crossing.   Farris v. Southern Ry. Co. 151 N. C. 483, 66
S. E. 457, 40 L.R.A.(N.S.) 1115;  Northern Pac. Ry. Co. v. Baxter,
187 Fed. 787, 109 C. C. A. 635;  Kozak v. Erie R. Co. 135 App. Div. 726,
119 N. Y. Supp. 876.

In still others, the speed of the cars kicked in was so excessive as to
cause an unusual impact when they reached the standing cars.   Kenney
v. Seaboard Air Line Ry. Co. 165 N. C. 99, 80 S. E. 1078, the court
charging the jury that if the car was kicked the usual way negligence
could not be found;  Alabama G. S. Ry. Co. v. Skotzy, 196 Ala. 25, 71
South. 335;  Koepke v. Chicago, R. I. & Pac. Ry. Co. 200 Ill. App. 247.
It is also to be observed that the Kentucky court has held that shunting
or kicking cars is of itself negligent.   Cincinnati, N. O. & T. P. Ry. Co.
v. Mullane's Adm. 151 Ky. 499, 152 S. W. 555.

In all of the above cases no one rode the cars kicked or shunted.   In
the case at bar Leary, the brakeman, rode with the cut.

We do not think that the mere fact that the two cars on the westerly
end were not coupled to the other 15 in the string, and that the brakes
were not set on them, and the further fact that the impact was of suffi-
cient force to throw these two cars forward from 8 to 12 feet will au-
thorize a jury to find actionable negligence against defendant in the
switching operation that resulted in Weireter's death, when the testimony
from men in the railroad service, and called by plaintiff, finds no fault
with the operation, but, on the contrary, said it was done in the cus-
tomary way with no excessive force.   "It is a matter of common knowl-
edge that in switching operations cars are brought together with vary-
ing degrees of force."   Beaton v. Great Northern Ry. Co. 123 Minn. 178,
143 N. W. 324.   It cannot be assumed that the ordinary jurors are com-
petent, without evidence and from common knowledge, to fix the stand-
ard by which switching operations must be carried on in much used rail-
road switch yards.

In view of the conclusion reached on the question of defendant's negligence we need not consider whether the cause of Weireter's death was a risk known and assumed by him.

We are constrained to confirm the judgment.