HYACINTH D. CIEBATTONE, AS ADMINISTRATOR OF THE ESTATE OF ANTONIO PIERI, DECEASED v. CHICAGO GREAT WESTERN RAILROAD COMPANY AND OTHERS.[1]

July 16, 1920.

No. 21,867.

**Master and servant — no duty to give warning of moving engines and cars in railroad yards.**

1. In a railroad yard where engines and cars are constantly moving to and fro and all men employed about the yard know that moving engines and cars may be encountered on any track at any time, there is

1 Reported in 178 N. W. 890.

ordinarily no obligation on the part of the railroad company to give warning of their approach to employees familiar with the operation of the yard.

## Absence of wanton negligence.

2. The evidence does not show that defendants failed to give timely warning to a sectionman of the approach of a car switched to a track where he was at work after discovering that he was unaware of its approach, and they cannot be charged with wanton negligence.

Action in the district court for Ramsey county to recover $50,000 for the death of plaintiff's intestate while in the employ of defendant company. The answer alleged contributory negligence on the part of decedent; that there was a general rule and custom promulgated and in force on the railway, and particularly in the yards in St. Paul where the accident occurred, that track laborers or employees in the yard and upon and about the railroad tracks, were expected to and did ordinarily keep a close lookout for all engines and cars moving or switching on the tracks in the yards to avoid being struck or injured by such moving cars or engines; that under the custom employees were not to rely upon others to notify them of the approach of an engine, train or cars, but must themselves keep a proper lookout. The case was tried before Michael, J., who when plaintiff rested granted defendants' motion to dismiss the action. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*Humphrey Barton,* for appellant.
*Briggs, Weyl & Briggs,* for respondents.

LEES, C.

The administrator of the estate of Antonio Pieri, deceased, brought this action to recover damages for his death, alleged to have been caused by the negligence of defendants, and appeals from an order denying his motion for a new trial after a dismissal of the action at the close of his case. The railroad company and Thomas, one of its sectionmen, Leaon, the foreman of its section crew, Roed, the foreman of its switching crew, and Spires, a switchman, were joined as defendants.

Pieri was one of the section crew employed in the defendant company's

freight yards in West St. Paul. On the day of the accident, Thomas was engaged in replacing the angle bars on a rail in the "motor" track, one of eight tracks running from the same lead track.

Called by plaintiff as a witness for cross-examination under the statute, Thomas testified that the accident happened between 2 and 3 o'clock in the afternoon; that about 20 minutes before it happened he had begun to replace the angle bars and was engaged in doing so when Pieri came and started to change the angle bars at the further end of the rail and about 12 feet from him; that when Pieri started to work, he said to him: "Tony, don't take the old bolt because they going to switch here. Just leave that track safe." And Pieri replied: "Yes, I know." About 10 minutes later a freight car was "kicked" onto the motor track by a switch engine. Thomas was between the car and Pieri, saw the car when it was 4 or 5 feet from him, got out of the way and shouted: "Look out," but Pieri failed to discover the car in time to escape and was run down and fatally injured.

The only other witness called by plaintiff was one Anderson, a member of the switching crew, who testified that directly after the accident Pieri said to him: "Nobody told me to look out."

Both Thomas and Anderson testified that it was not the custom in the yards to have a brakeman ride a freight car when it was "kicked" from one track to another, that the yard was level, and that switching was going on at all hours of the day. Anderson testified that the car which caused Pieri's death was one of a string of 18 and was the sixteenth that was switched from the lead track. Thomas testified that two cars were switched over the motor track before Pieri came there, and that other cars were switched to the tracks running off the lead track. The witnesses marked on a blue print of the yard the place where Thomas and Pieri were working while the switching was going on. The blue print shows that five of the tracks ran into the lead track substantially where Pieri was working, and the other three within 30 feet. If cars were switched to any of the five tracks, they would have passed so near him that he must have noticed them. Anderson testified that all but the second, third and fifth of the string of cars went over one or another of these five tracks. The cars moved at a speed of only 5 or 6 miles an hour.

Pieri had been employed by the defendant company as a sectionman for 14 years, was a track walker part of the time, and necessarily was familiar with the yard and the manner in which cars were moved about in it.

1. The learned trial court was of the opinion that the facts in this case and in Aerkfetz v. Humphreys, 145 U. S. 418, 12 Sup. Ct. 835, 36 L. ed. 758, were substantially the same, and that since the doctrine of that case has been adopted in this state (Beecroft v. Great Northern Ry. Co. 134 Minn. 86, 158 N. W. 800; Thayer v. Hines, 145 Minn. 240, 176 N. W. 752), plaintiff failed to prove actionable negligence on the part of any of the defendants. The doctrine is that in a railroad yard, where engines and cars are constantly moving to and fro and all men employed about the yard know that moving engines and cars may be encountered on any track at any time, there is ordinarily no obligation on the part of the railroad company to give warning of their approach to employees familiar with the operation of the yard. Plaintiff concedes that the law of this state is settled by these cases, but seeks to distinguish them from the case at bar. He contends that the facts here bring the case within a line of Federal decisions to which he has invited our attention.

The first is Colasurdo v. Central R. Co. reported in the Circuit Court in 180 Fed. 832, and in the Circuit Court of Appeals in 192 Fed. 901, 113 C. C. A. 379. In that case plaintiff was ordered to repair a track in defendant's yard in the night time. Four passenger coaches were being moved out of the yard and "kicked" back to the station platform to take on passengers. The cars were not lighted and were in charge of a single brakeman who gave no warning of their approach and did not apply the brakes until the forward car was but 6 or 8 feet from plaintiff. The court differentiated the case from Aerkfetz v. Humphreys, supra, because the accident happened at night, the train was unlighted, was running swiftly, and was without any ready means of control, and no precautions were taken to guard plaintiff against an unusual danger.

The second case is Central R. Co. v. Sharkey, 259 Fed. 144, 170 C. C. A. 212. Plaintiff, a car repairer, was walking between two tracks used by hundreds of persons. The space between the tracks was 4 feet wide. A fast train approached on one of the tracks. To avoid being pulled into

the train by its suction, he kept close to the other track after looking back to see whether anything was approaching on it. The smoke from the train that rushed past him was thick and heavy and he could not see through it. An engine, running fast, came up behind him on the other track and he was so near it that he was struck and injured. It was held that because the engine was driven at a rate of speed which was fast for a railroad yard, was hidden behind a smoke screen, and was operated without warning close to the path which the engineer knew was used by many persons, a sufficient showing of negligence was made to take the case to the jury.

The third case is Lehigh Valley R. Co. v. Scanlon, 259 Fed. 137, 170 C. C. A. 205. There, as in Thayer v. Hines, supra, plaintiff was struck by an engine which approached him without warning. The conductor in charge had told him that it would remain on another track. It was held that defendant's negligence was a jury question for reasons substantially the same as those stated by this court in the Thayer case.

The last case cited is Seaboard Air Line Ry. v. Koennecke, 239 U. S. 352, 36 Sup. Ct. 126, 60 L. ed. 324. Plaintiff's intestate was killed by a train that had just come into a station and was backing into the yard on the main track. The movement was not a yard movement and there was no lookout on the end of the train and no warning of its approach. It was held that the jury might properly find that the case was not that of an injury done by a switching engine known to be engaged upon its ordinary business in a yard.

We find nothing in these cases to warrant the conclusion that the Aerkfetz case has been shorn of authority, or that it does not fit the facts in this case. It has been referred to and applied very recently in Weireter v. Great Northern Ry. Co. supra, page 350, 178 N. W. 70, where many cases are carefully reviewed and distinguished.

If the jury had found that Pieri had not been told to look out for himself, it would not have changed the situation from a legal standpoint. He knew, or was bound to know, that cars were constantly being moved about in the ordinary operations of the yard and was required to look out for himself under the circumstances shown by the evidence.

2. It is contended that appellant made a showing of wilful and wan-

ton negligence, the claim being that Thomas failed to warn Pieri of his danger after discovering that he was in a perilous position. A number of decisions are cited in which the wanton negligence rule has been stated and applied by this and other courts. It is unnecessary to discuss them, for we are clearly of the opinion that the rule can have no possible application to the undisputed facts here. Appellant's brief correctly states the facts as follows: They (Thomas and Pieri) did not see the car until it was very close to Thomas, "who was nearer to the car by at least twelve feet than the deceased was, when Thomas noticed the car and got out of its way, and then called to the deceased who had not yet discovered the car, but it was too late for deceased to get out of its way and he was run over." Under these circumstances, to say that Thomas was guilty of wanton negligence and that he failed to warn Pieri in utter disregard of the duty one man owes to a fellow being threatened with imminent danger, would be wholly unjustifiable. He had scant time to escape himself and then had to gather his wits sufficiently to perceive Pieri's danger and warn him.

The order of the trial court must be and it hereby is affirmed.