JAMES ARTHUR McCANN v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY AND ANOTHER.
GREAT NORTHERN RAILWAY COMPANY, APPELLANT.[1]

April 11, 1924.

No. 23,736.

**Verdict against appellant reversed—risk known and assumed.**

Plaintiff's decedent, a member of a switching crew in the appellant's switchyards at Minneapolis, in transmitting signals from the foreman to the engineer pulling a string of cars from a spur onto the lead, took a position between the rails of a spur track in the Minneapolis & St. Louis switch yards paralleling appellant's lead, and while so engaged in his work a switching crew of the Minneapolis & St. Louis road shunted cars in upon the spur and the decedent was run down and killed. In this action against both railroads there was a verdict in favor of the Minneapolis & St. Louis road. It is *held:*

(1) No actionable negligence was proven against appellant on account of the location of its own tracks or the clearance between its lead and the tracks of the other defendant, or in any other respect.

(2) The risk which caused decedent's death was fully known and appreciated by him, and hence was assumed.

Action in the district court for Hennepin county by the special administrator of the estate of Henry Lewis La Belle, deceased, to recover $45,452 for the death of his intestate. The case was tried

[1]Reported in 198 N. W. 300.

before Baldwin, J., who when plaintiff rested and at the close of the testimony denied separate motions of defendants for a directed verdict, and a jury which returned separate verdicts, one in favor of the Minneapolis Company and the other against the Great Northern Company for $15,000. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, the Great Northern Railway Company appealed. Reversed with directions.

*Hoke, Krause & Faegre,* for appellant.

*Olof L. Bruce,* for respondent.

HOLT, J.

The appeal is from an order denying the motion of one of the defendants, the Great Northern Railway Company, for judgment non obstante or a new trial.

Henry L. LaBell, a switchman in the employ of the Great Northern Railway Company, while passing signals to the engineer of his switching crew, stepped onto an adjacent track of the Minneapolis & St. Louis Railroad Company, and was run down and killed by cars being pushed in thereon by a switching crew of the latter company. This action was brought by the special administrator of LaBell's estate for the benefit of the widow and child of the decedent. Both companies were made defendants. There was a verdict in favor of the Minneapolis & St. Louis Company, and no attention to any question touching its liability is called for.

The accident occurred under or near the Seventh street bridge in Minneapolis. The Great Northern has here a lead track running in an easterly and westerly direction. From this lead, spur tracks branch out northeasterly. The switch for the track number 5 is under the bridge, for number 6 a short distance further east, and for number 7 still further. The locomotive, headed west, was pulling a string of 21 or 22 cars out of track 7 onto the lead westerly, and LaBell's duty was to pass the signal to the engineer from the switchman Norling, who was a little east of the switch for track 7 receiving the signal from the foreman at the end of the string. The lead track is not straight but dips to the south as it approaches the switch to track 7. This makes it more difficult to pass signals.

The difficulty is increased under the bridge because of two pillars standing about 4 feet from the south rail of the lead. Parallel to this Great Northern lead track for some distance east and west of the Seventh street bridge is Spur Track Number 1 in the switchyard of the Minneapolis & St. Louis Railroad. There is a dispute as to the distance between the two tracks at the time of the accident, plaintiff claiming it was a few inches less than 13 feet from center to center at the place of the accident, and that since then the Great Northern Company has moved its track about 18 inches north, and the latter contending that the track has not been moved and that the distance from center to center of the two tracks at the place the deceased stood when hit has always been between 14 and 15 feet.

Appellant insists on judgment notwithstanding the verdict on three grounds: (a) Plaintiff was without capacity to sue; (b) no negligence on part of appellant was proven; and (c) the decedent assumed the risk. The conclusion to which we are forced upon the two last propositions, obviates consideration of the first.

Appellant contends that no actionable negligence was proven against it, and, even if there had been, decedent as a matter of law assumed the risk which caused his death. The negligence charged against appellant was that the tracks in its switchyard were located too near those of the Minneapolis & St. Louis road for the safety of the men engaged in switching operations; that in such operations it was necessary for the switchmen of appellant to go upon the tracks of the Minneapolis & St. Louis road when pulling out onto the lead in question; and that a custom and practice had grown up under which both railroad companies protected the servants of the other who came upon or near the tracks in doing their work.

Plaintiff asserts a violation of sections 4275 and 4276, G. S. 1913, as proof of negligence, claiming that the distance between the lead track of the appellant and the parallel spur 1 of the Minneapolis & St. Louis road was less at the time of the accident than the minimum prescribed by said sections. The trial court considered the statute inapplicable to the tracks in question, and rightly so, because by its very terms the law relates solely to after constructed tracks. The

evidence is conclusive that, many years prior to the enactment of the sections mentioned, these tracks were laid in the very place they were when decedent was struck. It is probably true that a compliance with the statute is not necessarily conclusive proof of freedom from negligence, since it may be said that the statute was designed to prescribe a minimum.

But, statute or no statute, we are constrained to hold, under well-settled law, that there is no evidence to warrant a submission to a jury of any negligence in the location and maintenance of the two tracks in question as they were at the time of the accident and under the conditions there existing. Plaintiff asserts that appellant conceded negligence at the trial. That is not a fair inference from what its counsel stated. Nor is it the law that the jury may, from the maps and the physical facts disclosed, determine whether or not there is negligence in the maintenance of the tracks in the position they were when decedent met death. The laying out of switch-yards, railroad lines, and the placing of the necessary structures and appliances, have always been regarded as engineering problems to be solved by experts in railroading, and not by a jury unaided by expert testimony, who under the compelling influence of some sad accident like the present would find negligence in any construction plan. Clay v. Chicago, M. & St. P. Ry. Co. 104 Minn. 1, 115 N. W. 949; Dolge v. Northern Pac. Ry. Co. 107 Minn. 242, 119 N. W. 1066, 26 L. R. A. (N. S.) 600; McNamee v. Hines, 150 Minn. 97, 184 N. W. 675.

In the last cited case it is said [at page 100]: "We think that defendant is not chargeable with negligence in continuing to use a yard in which the clearance between tracks was only six feet and six inches, unless it also appears that such yards are no longer in common use or that changed conditions require a greater clearance."

The primary purpose of the statute fixing the minimum distance between parallel tracks is, of course, to protect men who are required to climb the sides of cars from being brushed off, and give safe room to those who have to pass in their work between the tracks. In all other respects it remains an engineering problem

as to proximity of parallel tracks and curves therein and overhead or side obstructions for passing necessary signals.

In this case plaintiff offered no evidence of negligence, except the bare physical facts as to the location of these two tracks, while appellant's evidence from a competent expert remained uncontradicted that the clearance between the two tracks conformed to the standard practice among railroads in the northwest when the tracks were laid, and also to that in vogue at the time of the accident. Appellant cannot be placed in any worse position by the fact that the track on which decedent met death is owned by another company than by considering it as a part of appellant's yard and as if it had operated thereon. The verdict in favor of the Minneapolis & St. Louis Company establishes that there was no negligence on the part of those in charge of the cars that caused La Bell's death. Nor does the evidence warrant a finding that the bridge or the posts supporting it compelled La Bell to take the position he did, or that the location of appellant's tracks was negligent or faulty because of the position of the posts or bridge. There was a clearance of more than 8 feet between the bridge and the highest freight cars, hence there could not have been any difficulty about passing signals, if La Bell and the next man to him had taken their positions on top of the train they were moving.

Although there is no proof at all of any actionable negligence on the part of appellant, we would still be inclined to grant a new trial rather than judgment, on the theory that, perhaps, plaintiff might be able at another trial to adduce proper proof of fault in the location of the tracks in this yard, were it not for the fact that this record discloses another insuperable obstacle to recovery which we are satisfied cannot be overcome. The evidence as a matter of law is conclusive that La Bell assumed the risk of being run down as he was. La Bell had worked as switchman and foreman of switching crews in this yard for a long time and knew perfectly the location of the tracks and the obstructions to the passing of signals. He took the position between the rails of the track deliberately, at least there was no occasion for hurry. He knew the custom and practice of sending down cars on the Minneapolis & St. Louis spur

next to appellant's lead, without any one to protect those who might be thereon. And, of course, he knew when he took the position between the rails on this spur what the result would be if he failed to observe cars that might be sent in. It was yet daylight. The danger was obvious to and fully appreciated by one of his experience and knowledge of the situation. When there is any element lacking either as to knowledge of the situation or the appreciation of the danger, the assumption of the risk is for the jury, but it is impossible to say that here there is the slightest evidence from which to infer other than the fullest knowledge of La Bell regarding the actual situation in respect to the tracks, the manner of doing the work thereon, and obstructions or difficulties of passing signals, and the utmost appreciation of the dangers encountered from moving cars in taking the position where he was when struck. There was no evidence of any practice on the part of appellant to warn against the movement of cars upon the Minneapolis & St. Louis spur, and, furthermore, the jury found no negligence in that movement.

It is true the doctrine of assumption of risk is not favored by the courts, but, when both full knowledge of the situation and obvious appreciation of the danger are shown, the courts have no choice but to apply the law. This was done in Johnson v. Northern Pac. Ry. Co. 125 Minn. 29, 145 N. W. 628; Beecroft v. Great Northern Ry. Co. 134 Minn. 86, 158 N. W. 800; Weireter v. Great Northern Ry. Co. 146 Minn. 350, 178 N. W. 887; Ciebattone v. Chicago Great Western R. Co. 146 Minn. 362, 178 N. W. 890. In the instant case the evidence shows that signals could be passed for a train movement, such as was attempted, without stepping upon the spur track, but that it was more convenient for one in decedent's work to stand on the spur if no cars were there. Respondent relies on cases where cars were shunted in the dark, or where the employe doing work upon a track or between cars had reason to believe that he would be protected or warned of a movement. Such are Boos v. Minneapolis, St. P. & S. S. M. Ry. Co. 127 Minn. 381, 149 N. W. 660; Thayer v. Hines, 145 Minn. 240, 176 N. W. 752.

It is regrettable that the Workmen's Compensation Law has not been extended to men in the railroad service, who, perhaps, more than in any other industry, are exposed to injuries and death. No normal person seeks death or would willingly suffer pain and injury. At the same time, when daily and hourly exposed to dangers, vigilance may momentarily relax, or work may so engross the attention that the senses fail for an instant. Human watchfulness and endurance have limitations, and it is not right that a moment's slip should throw all the consequences upon the employe and his dependents, and the business or the employer go free. This is a case that argues powerfully for proper legislation.

Under the view we are compelled to take, it is not expedient to determine other assignments of error.

The order is reversed with direction to enter judgment for appellant notwithstanding the verdict.