## A. H. OLSON v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.[1]

March 6, 1925.

No. 24,301.

**When bell of switch engine in switch yard need not ring.**

1. In the absence of some custom to the contrary, or of the presence of persons at work on or near the track ahead, it is not negligence to operate a switch engine in a switch yard without ringing the bell.

**Directed verdict for defendant proper.**

2. The trial court was justified, under the evidence, in directing a verdict in favor of the defendant.

*Headnote 1. See Master and Servant, 26 Cyc. p. 1168.
Headnote 2. See Master and Servant, 26 Cyc. p. 1474.

Action in the district court for Dakota county to recover $25,000. The case was tried before Converse, J., who granted defendant's motion for a directed verdict. From an order, Schultz, J., denying his motion for a new trial, plaintiff appealed. Affirmed.

*Dahl & McDonald*, for appellant.
*O'Brien, Horn & Stringer*, for respondent.

QUINN, J.

Action to recover damages for personal injuries which plaintiff claims to have sustained while in the employ of the defendant, as

[1]Reported in 202 N. W. 490.

a switchman at Cedar Rapids in the state of Iowa, on February 2, 1923. There was a trial, and, at the close of the testimony, the trial court directed a verdict in favor of the defendant upon the ground that the proofs failed to show negligence on the part of the defendant. From an order denying his motion for a new trial, plaintiff appealed.

Defendant's switching yards at Cedar Rapids are very extensive, but, so far as here material, consist of two parallel tracks, 10 feet apart between the nearest rails, extending in a general north and south direction, which merge into a single track extending south. The easterly of these two tracks is called the "north lead" and the westerly the "south lead." Extending in a northwesterly direction are a series of 23 tracks, numbered from 2 to 24, beginning at the south, each connecting with the south lead by a switch. The switch standards are located between the two tracks, 6 feet east of the south lead and 4 feet west of the north lead. These standards are about 36 feet apart. On the east side of the north lead, running parallel therewith, is a caboose storage track which connects with the north lead by a switch.

The point of the accident was between the switch standard No. 2 and the north lead track. The accident occurred between 10 and 11 at night, during a snowstorm with considerable wind. The switch crew, with which appellant was connected, consisted of Mr. Smith, engineer, Mr. Schneider, fireman, Mr. Kiffee, foreman, and Mr. Swatosh and appellant as helpers. This crew was engaged in taking three cabooses from the caboose track and placing them on the switches to the west of the south lead. To accomplish this purpose, it was necessary to take the cabooses onto the north lead, continue south beyond where the two tracks merge, then back up, pushing them on the south lead. When nearing the switch for sidetrack No. 2, engineer McMillan appeared on the south lead with his engine, and walked south to switch stand No. 2. At about this time the switch was turned to allow the caboose train to go onto switch track No. 2 so that McMillan's train might pass on south. As the caboose train was slowing down for the switch, plaintiff was riding on a platform near the engine. He stepped off, walked 10 or 12

feet to the switch stand, conversed a moment with McMillan and then turned and passed between the switch stand and the north lead. At this moment the Petrick engine, pushing a refrigerator car, came from the south, colliding with the plaintiff a few feet south of the switch stand, knocking him down on the west side of the rail, and then, as he undertook to arise, he was hit again, when McMillan grabbed him and pulled him away. The bell on Petrick's engine was not ringing, the lights were burning, and a brakeman with a lighted lantern was on a ladder at the front, right-hand corner of the refrigerator car as it was moving north. The engineer was at his post in the cab, on the lookout. At the moment of the injury, the fireman was otherwise engaged.

It is contended on behalf of appellant that the testimony was sufficient to make an issue for the jury, as to the negligence of the defendant, with reference to the men keeping proper lookout on the locomotive and car which collided with plaintiff and with reference to giving proper warning by bell or otherwise.

The proofs are conclusive that it was not customary to ring the bell while switching in this yard, either in the day or night time; that there were at least three switch engines at work at the very locality at the time of the accident, and that there were some 8 or 10, all told, in the yard; that the Petrick engine and the one plaintiff was working with, had been switching up and down these tracks near one another during the entire evening, storming as it was, and that the bell was not rung upon either.

It is claimed that, had the fireman on the Petrick locomotive been on the lookout, the accident might not have happened. We see no force to this contention because, if he had been, he would have seen nothing as plaintiff was not upon the track. He simply moved around the switch stand and was almost instantly struck by the corner of the car. He was not upon the track either before or after the accident. He fell outside the track.

The rule is well established in this state that, in a switch yard, where numerous engines and cars are being switched about on many tracks and from track to track, except to persons working ahead on or near the track, there is no obligation on the railroad

company to give warning of their approach or movement to employes familiar with the operation of the yard. Beecroft v. G. N. Ry. Co. 134 Minn. 86, 158 N. W. 800; Thayer v. Hines, 145 Minn. 240, 176 N. W. 752; Ciebattone v. C. G. W. R. Co. 146 Minn. 362, 178 N. W. 890; Weireter v. G. N. Ry. Co. 146 Minn. 350, 178 N. W. 887; Aerkfetz v. Humphreys, 145 U. S. 418, 12 Sup. Ct. 835, 36 L. ed. 758.

There was nothing unusual about the handling of the three engines or strings of cars at the time of the accident. McMillan's engine was standing on the south lead some five or six carlengths north from switch stand No. 2. The Smith engine was pushing in on to track No. 2 at the rate of about two miles per hour. The Petrick engine, with the refrigerator car, was moving north on the north lead at the rate of about six miles per hour. It was snowing and blowing. McMillan was standing near the switch stand. Plaintiff stepped off the caboose platform, walked ten or twelve feet to where McMillan was, spoke to him, and then undertook to pass between the switch stand and the north lead track when he came in contact with the refrigerator car. He says that he looked to the south, after alighting from the caboose, but saw no train or light. There is no testimony in the record tending to show that there was a custom requiring the ringing of the bell under such circumstances. The evidence is conclusive that it was not the custom. It is perfectly manifest that plaintiff came across from the south lead track so suddenly that there was no opportunity to have given him any special warning had the men on the Smith engine or on the refrigerator car discovered him as he approached the switch standard.

Affirmed.

STONE, J., took no part.