## AGNES AND CLARENCE FITZGERALD v. VILLAGE OF BOVEY.[1]

### May 25, 1928.

### Nos. 26,614, 26,615.

**Defendant village negligent in maintenance of unlighted marker at street intersection.**

1. The question as to whether defendant was negligent was submitted to the jury under proper instructions. There was ample evidence sustaining the conclusion reached by the jury. It was justified in finding defendant negligent in the placing and maintaining of an unlighted and unguarded marker at a street intersection under the facts disclosed by the evidence.

**Municipality liable to person injured because of its want of care in keeping streets in safe condition.**

2. A municipality, being given the exclusive control of its streets, is required to exercise reasonable care to keep them in safe condition and should be held liable to anyone who is injured as the result of the want of such care, the injured person not being guilty of contributory negligence.

**Husband's negligence in driving car not imputed to his wife.**

3. The evidence in this case fails to show any contributory negligence by the plaintiff in either case. Even if the husband were guilty of contributory negligence, it could not be imputed to the wife nor bar her recovery under the facts in this case.

Motor Vehicles, 42 C. J. p. 867 n. 39, 40; p. 869 n. 67.
Municipal Corporations, 43 C. J. p. 974 n. 44.
Negligence, 29 Cyc. p. 543 n. 13; p. 550 n. 59.

---

See note in 12 A. L. R. 333; 39 A. L. R. 781; 13 R. C. L. 386; 4 R. C. L. Supp. 813; 6 R. C. L. Supp. 763.
See note in 8 L.R.A.(N.S.) 656; 13 R. C. L. 1438; 5 R. C. L. Supp. 735.

Two actions in the district court for Itasca county, tried together, one by Agnes Fitzgerald to recover damages for personal injuries, and the other by her husband, Clarence Fitzgerald, to recover for

[1]Reported in 219 N. W. 774.

personal injuries and for damage to his automobile. There was a verdict in each case for the plaintiff. From the judgments entered thereon, Wright, J. defendant appealed. Affirmed.

*Naughtin & Henley* and *C. A. Wagner,* for appellant.

*Gannon, Strizich & Farnand,* for respondents.

HILTON, J.

These two personal injury actions were tried jointly, separate verdicts returned and judgments entered thereon, from which defendant appeals.

Second avenue, a paved street in the village of Bovey, runs north and south and is intersected by Fourth street, unpaved, running east and west. The width of the Second avenue pavement is 41 feet 2 inches between curbs. West of the intersection Fourth street was used but little. Near the center of the intersection of these two streets, close to a cover over a sewer manhole, the village had placed and maintained a circular, metallic plate or marker, referred to in the evidence as a "dummy policeman" or a "dummy." It was cone-shaped, 18 inches in diameter, about 6 inches high in the center, and fastened to the pavement by a bolt through its perpendicular center. About three-fourths of an inch of the upper part of the bolt, extending above the dummy, was threaded and on this a nut was screwed when the dummy was installed. At the time the dummy was removed the nut had been broken off and the dummy was removable by hand. The dummy was not in the exact center of the intersection. It extended to the west of the center 13 inches, and but 5 inches to the east thereof. Eighteen feet 3 inches south of the dummy the pavement began to narrow, equally on each side, and in 16 feet further the width was reduced to 18 feet, the usual width of a Babcock paved highway. Second avenue is a part of trunk highway No. 35. Thirty-six feet from the Second avenue curb line, at the corner southwest of the dummy, is located a well lighted gasolene filling station. A garage is at the northwest corner. Near each of the four corners of the intersection and diagonally 40 feet from the dummy is a street lamp on a post.

The accident here involved occurred at the intersection above described on September 14, 1925, between 8 and 8:30 o'clock p. m. It was dark. There is a dispute as to whether the street lamps were lighted. Respondents, Clarence and Agnes Fitzgerald, husband and wife, were riding in a Ford touring car, testified to being in good condition, driven by the husband. Both were riding in the front seat. The car, with its headlights burning, was going in a southerly direction on Second avenue. There was testimony that its rate of speed did not exceed 15 miles an hour. The left front wheel of the car hit the dummy, the car was diverted in a southeasterly direction and, after going 61½ feet, tipped over in a ditch against a telephone pole.

The husband's action was for injuries to himself and damage to the car; that of the wife was for injuries to herself. There is no complaint made as to the amount of the verdicts and the judgments entered thereon.

The dummy had been installed for about four months. Mr. Fitzgerald stated that he could not and did not see it on the night in question but had seen it once several months before when driving on Second avenue; that he was looking ahead to see where he was going. He testified that at the time of the accident he was not driving in the middle of the street but that the left front wheel might have been on the center line of the street. His wife testified that the car was on the right side of the center of the street. Witness Smith says that the car was pretty well on the right side. Mr. Fitzgerald testified that at the time of the accident he was blinded by the lights of two oncoming automobiles; did not have in mind the fact that a dummy was there, and his attention was not called to that fact; that he did everything he could to control the car and avoid injury. Mrs. Fitzgerald did not see the dummy and did not remember it was there. The testimony also shows that there were one or more parked automobiles on Second avenue near the northwest corner of the intersection.

But two questions are involved on these appeals: (1) Was the defendant negligent in placing and maintaining the intersection

plate at the place and in the manner described? (2) Were the plaintiffs guilty of contributory negligence?

1. The question as to whether the defendant was negligent was submitted to the jury under proper instructions, unobjected to, and decided in the affirmative. There was ample evidence to sustain that conclusion.

Defendant contends in its brief (though frankly stating inability to find cases touching directly on the point) that as the governing body of the village determined to install and did install such a marker as a practical thing to do, as a precaution or safeguard to assist the traveling public, and that other municipalities have done the same, there was no question to submit to the jury. There is however here no evidence that other municipalities have installed and maintained like markers, nor is there any evidence that such markers are practical, proper or necessary. All that is shown is that the defendant installed and maintained this marker and others like it. This mere fact is by no means conclusive that it was proper and did not constitute a defect or obstruction in the street.

Counsel for defendant cites excerpts from various Minnesota railroad cases which are not particularly helpful or determinative. There is here no situation such as in McCann v. M. & St. L. R. Co. 159 Minn. 70, 73, 198 N. W. 300, where railway engineering problems to be solved by experts were involved, the court there holding that a jury, unaided by expert testimony, should not be permitted to pass on negligence in the construction plan. In Weireter v. G. N. Ry. Co. 146 Minn. 350, 178 N. W. 887, the customary mode of shunting cars in extensive switch-yards was being considered. In Olson v. C. R. I. & P. Ry. Co. 162 Minn. 194, 202 N. W. 490, a directed verdict for defendant was sustained because this court had previously held under circumstances similar to those in that case that there was no obligation on the railway company to give warnings of the approach of switch engines to employes familiar with the operations in the yards. The case of Larson v. D. M. & N. Ry. Co. 142 Minn. 366, 172 N. W. 762, simply held that a defendant was not required to guard against unforeseeable dangers such as was the one in that case.

Second avenue, a main street in the village, a part of trunk high-way No. 35, was a much traveled thoroughfare. The dummy when installed was white. It had not been painted since its installation. The record does not show its color at the time of the accident. The dummy, once white, was certainly darkened in color by exposure to the elements and the dirt and grease incident to heavy automobile traffic. The ordinary street pavement, originally a grayish color, is also subject to a change in color. The jury saw the dummy as an exhibit, as have we. It is a dull dark gray color. It was not lighted; in fact there was no way to light it. It was a cheap marker. If the nut was broken off at the time of the accident, it may in no way have increased the danger. The fact that the marker extended 13 inches instead of 9 inches beyond the center on the west side of the intersection is not of much importance though plaintiff might not have hit it but for that.

Within 18 feet 3 inches south of the dummy the pavement began to narrow and in 16 feet more became only 18 feet wide. In a distance of 34 feet 3 inches from the marker the pavement narrowed from 41 feet 2 inches to 18 feet. Plaintiff knew of this narrowing and because of the lights of oncoming automobiles could doubtless see it. Going at 15 miles an hour, within about one second from the time he arrived at the cross-street he was at the center of the inter-section and, had no accident happened, within a little over another second and one-half he would have been on the 18-foot pavement, closely approaching two cars going north. The jury could well find that under all these conditions the defendant was negligent in thus placing and maintaining this unlighted and unguarded dummy, the hitting of which resulted in quite a serious accident.

2. A municipality, being given the exclusive control of its streets, is required to exercise reasonable care to keep them in a safe con-dition and should be held liable to anyone who is injured as the result of the want of such care, the injured person not being guilty of contributory negligence. The liability arises out of the fact that to the municipality is given the exclusive control of the streets and that it has the power to provide the means for the proper perform-

ance of the duty of keeping them in a safe condition. 4 Dunnell, Minn. Dig. (2 ed.) § 6818; Moran v. Village of Hibbing, 173 Minn. 458, 217 N. W. 495.

The statements by the courts in the following cases are interesting and have some bearing on the instant case: Morman v. City of Emmetsburg, 195 Iowa, 627, 191 N. W. 156; City of Vicksburg v. Harralson, 136 Miss. 872, 101 So. 713, Annotated, 39 A. L. R. 777; Titus v. Bloomfield, 80 Ind. App. 483, 141 N. E. 360; Town of Hobart v. Casbon, 81 Ind. App. 24, 142 N. E. 138; Wells v. Village of Kenilworth, 228 Ill. App. 332; Phelps v. City of Mankato, 23 Minn. 276; Seewald v. Schmidt, 127 Minn. 375, 149 N. W. 655; Aubin v. Duluth St. Ry. Co. 169 Minn. 342, 211 N. W. 580.

We are not called upon here to hold that the installing and maintaining of such an unlightable dummy (if kept in a clean and brightly painted, easily discernible condition) in different surroundings and under different conditions, with competent evidence as to the practicability and necessity therefor, for the purpose intended, would not absolve the municipality from the charge of negligence as a matter of law and the question therefore be not one for the jury. We hold that here it was a jury question and there was sufficient evidence to sustain the verdict.

3. There is no evidence even tending to show any contributory negligence on the part of Mrs. Fitzgerald. Even if her husband were negligent, such negligence could not be imputed to her nor bar her recovery here. Kokesh v. Price, 136 Minn. 304, 308, 161 N. W. 715, 23 A. L. R. 643; Lundh v. G. N. Ry. Co. 165 Minn. 141, 206 N. W. 43; 4 Dunnell, Minn. Dig. (2 ed.) § 7038. She did not interfere in any way with his driving nor distract his attention while he was driving. There was no failure on her part to do something that she should have done to warn him of any danger that she may have seen ahead of them.

Unless the evidence conclusively showed that Mr. Fitzgerald was guilty of contributory negligence, the question was for the jury. 4 Dunnell, Minn. Dig. (2 ed.) § 7033.

"It is only in the clearest of cases when the facts are undisputed and it is plain that all reasonable men can draw but one conclusion

from them that the question becomes one of law." Aubin v. Duluth St. Ry. Co. 169 Minn. 342, 345, 211 N. W. 580.

The jury could well find from the evidence that Fitzgerald was driving on the right side of the center of the street. However if the left wheels of his car were slightly over on the left side and to that extent constituted a violation of the statute, it was not conclusive evidence of contributory negligence but merely a circumstance for the consideration of the jury. Dohm v. R. N. Cardozo & Brother, 165 Minn. 193, 206 N. W. 377. We have carefully examined the evidence and hold that the conclusion of the jury was more than justified.

Judgments affirmed.

STONE, J. (dissenting).

I disagree. My error, if any, is in my premise that it is a matter of common knowledge that the dummy, so-called, which is said to have been the cause of the accident in this case, is substantially the same as those used in cities and villages everywhere for the purpose of guiding traffic. If that be true, defendant could not have been negligent. The result is wrong because it proceeds from the untenable proposition that there must be proof of a fact of common knowledge, one that assumes that a jury may be permitted to decide a case contrary to a known fact of everyday experience. I dislike that argument even more than the result to which it has led in this case.