**SUMNEY v. SOUTHERN RY. CO. et al.**

**No. 4122.**

Circuit Court of Appeals, Fourth Circuit.

April 6, 1937.

438

John C. Cheesborough, of Asheville, N. C. (J. M. Horner, Jr., of Asheville, N. C., on the brief), for appellant.

G. Lyle Jones, of Asheville, N. C. (George H. Ward and Jones & Ward, both of Asheville, N. C., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal in an action against a railway company to recover damages on account of the death of an employee which is alleged to have been caused by the company's negligence. The complaint set forth a cause of action under the Federal Employers' Liability Act (45 U. S.C.A. § 51 et seq.) and also one under the state law, but it is not seriously disputed that the federal act governs. The court instructed the jury to answer the issues of negligence, contributory negligence, and assumption of risk in favor of the defendant; and, from judgment on the verdict so rendered, the plaintiff has appealed. In the view which we take of the case it is necessary to consider only whether there was sufficient evidence of defendant's negligence to take the case to the jury on that issue.

Decedent was employed by defendant to work about its station at Biltmore, N. C., to sweep the tracks in the Biltmore yard, to place grease or oil on the switches, and to perform general duties of similar character. On the afternoon of January 10, 1934, while engaged in sweeping the tracks opposite the station, he stepped off of the second track to get out of the way of an eastbound freight train and was leaning against or standing near some freight cars which had been left on the third track, when he was knocked down and run over by a sudden movement of these cars and so seriously injured that he died within a few hours. The sudden movement of the cars resulted from their being struck by other cars which were being pushed westwardly along the third track in the course of a switching operation. No warning or signal was given of the approach of these cars or of the movement of the cars by which decedent was injured.

The track on which the cars which caused the injury were standing was regularly used for switching operations, and there was no rule or custom of the company requiring that signals be given when cars left standing upon it were moved. On the contrary, the evidence was uncontradicted to the effect that it was customary to move cars upon that track without signal or notice. Between this track and the second track, upon which the eastbound freight train was moving, there was a space of more than eleven feet, with a clearance between cars of eight feet or more, where decedent might have remained in safety during the passage of the train. The cars by which he was injured had been placed on the third track on the morning of the injury just east of an asphalt walkway leading from the passenger station to the express or baggage house; but there is no showing that decedent had any duties to perform in connection with this walkway or that those in charge of the switching operation had any reason to believe that he would be there at the time. The cars had been separated four or five car lengths east of this western end and a gap of several feet had been left between them so that members of a section gang at work on the second track might carry cross ties through it to the place where they were working; but decedent had no connection with the section gang or the work in which it was engaged.

The contention of plaintiff is that decedent, after stepping off of track two, was standing just west of the cars on track three when he was struck. We think, however, as did the judge below, that the evidence establishes conclusively that he was standing between two of the cars and leaning against one of them, but we do not regard this difference in position as having any material bearing on the question of defendant's negligence. Decedent's death unquestionably resulted from the movement of the cars in the course of a switching operation; and the question on the issue of defendant's negligence is whether it owed him the duty of giving a signal or notice before moving them. Notice was given the members of the section gang that the gap in the cars was about to be closed; but no

such notice was given decedent, who was not known to be about the cars, and was not engaged in any business which required that he be in a position of danger with respect to them.

The authorities are clear to the effect that, in the absence of rule or custom requiring it, no signal as to movement of cars need be given in the course of switching operations where, as here, there is nothing to show that those in charge of the operations know or have reason to believe that others are in positions where they will be endangered thereby. Chesapeake & O. Ry. Co. v. Mihas, 280 U.S. 102, 50 S.Ct. 42, 44, 74 L.Ed. 207; Toledo, St. L. & W. R. Co. v. Allen, 276 U.S. 165, 48 S.Ct. 215, 217, 72 L.Ed. 513; Aerkfetz v. Humphreys, 145 U.S. 418, 12 S.Ct. 835, 36 L.Ed. 758; McClellan v. Penn. R. Co. (C.C.A.2d) 62 F. (2d) 61; Cain v. Fort Worth & Denver City R. Co. (C.C.A.5th) 75 F.(2d) 103. And, even where those engaged in work about cars are entitled to notice of their movement, the duty to give such notice is owing to them alone and failure to give it cannot be relied upon as negligence by one to whom the duty is not owing. The Mihas Case, supra, is directly in point and is, of course, controlling upon us. In that case an employee was attempting to climb over a coal car, standing with a number of others on a switch track, when the cars so standing were struck by others forcibly propelled by means of a flying switch, with the result that the employee was thrown between cars and injured. There was evidence that other persons had been engaged in unloading coal from one of the cars and that it was customary to give notice to such persons before moving the cars. The court said: "The negligence complained of is that, in making the flying switch, the standing cars were struck with great and unnecessary force; that it was the established custom of the railway company to give due notice and warning to all persons in or about such cars before moving or shunting other cars against the standing cars; and that such notice or warning was not given upon the occasion in question. The evidence, however, is that the notification or warning was exclusively for persons, not employees, engaged in unloading cars. There was no custom or duty of that kind in respect of employees engaged on or about the tracks. If there

was a violation of duty, therefore, on the part of the railway company, it was not of a duty owing to Mihas; and the rule is well established that it is not sufficient for a complainant to show that he has been injured by the failure of another to perform a duty or obligation unless that duty or obligation was one owing to the complainant. * * * There is nothing in the record to show that employees engaged in the switching operation knew or had reason to believe that Mihas was in any position of danger. In the absence of such knowledge or ground for belief, they were not required to warn him of the impending switching operation or take other steps to protect him. Toledo, St. L. & W. R. Co. v. Allen, 276 U.S. 165, 173, 48 S.Ct. 215, 72 L.Ed. 513."

In the Allen Case, supra, where a car checker was struck and injured by a car which was shunted in the course of a switching operation without signal or warning, the Supreme Court said: "On the evidence it must be held that he knew how switching was done there; and, in the absence of proof that he was exposed to some unusual danger by reason of a departure from the practice generally followed, it cannot be held that defendant was in duty bound to give him warning. The members of the switching crew had a right to believe that he would keep out of the way of the shunted car. Aerkfetz v. Humphreys, supra. * * * There is nothing to sustain a finding that plaintiff was in any danger other than such as was usually incident to his employment or that any member of the crew knew or had any reason to believe that he was oblivious of the situation. Illinois Central Railroad Co. v. Ackerman (C.C. A.) 144 F. 959, 962. In the absence of knowledge on their part that he was in a place where he was liable to be struck and oblivious of that danger, they were not required to vary the switching practice customarily followed in that yard or to warn or to take other steps to protect him."

While we are, of course, bound by the decisions of the Supreme Court of the United States, it is of interest to note that the rule as above stated has been laid down by the Supreme Court of North Carolina, the state in which the injury occurred and the action was tried. In Hinson v. Atlanta & C. Air Line R. Co., 172 N.C. 646, 90 S.E. 772, 773, it appear-

ed that an employee, who had crawled under one of a train of railroad cars which was standing on a side track, was injured by the sudden starting of the cars due to their having been struck by an engine. The court said: "Plaintiff's evidence fails to disclose wherein the defendant failed to discharge any duty it owed him. The habit of employees going under trains instead of around them is not sufficient to charge an engineer with notice that plaintiff was under the drawhead. Plaintiff was a workman of long experience, and entirely familiar with the uncertain movements of engines and cars in the yards. The defendant had a right to move cars and engines on the yards as the necessities of its business required, and the only duty, under the circumstances, that it owed plaintiff was to refrain, if possible, from injuring him in case his precarious condition had been discovered. There is no pretense that plaintiff's condition was discovered, and as he was under the train, it is manifest it could not have been discovered by any one on the engine or tender. The defendant is not required to ring bells and blow whistles every time a car is shifted or a train moved on its switching yards, for the reason stated by Justice Brewer in Aerkfetz v. Humphreys, 145 U.S. 418, 12 S.Ct. 835, 36 L.Ed. 758."

The cases of Moore v. Director General, 179 N.C. 637, 103 S.E. 444, cert. denied 254 U.S. 640, 41 S.Ct. 13, 65 L. Ed. 452, and Thayer v. Hines, 145 Minn. 240, 176 N.W. 752, called to our attention by appellant, are not in point. In the first of these cases, the injury of decedent resulted from a flying switch, which was made in violation of the company's rules and without warning to decedent and from the fact that cars were shunted thereby onto the track on which decedent was standing whereas the custom was to place them on another track. The court referred to the rules of the company as permitting the construction that

a signal was required in such case, and construed the evidence as showing negligence in the placing of the cars, which might have misled decedent to his injury. In the second case, it was shown that those engaged in a switching operation in the nighttime kicked a car without warning against decedent, when they should have known that he was in a position to be injured by such operation. It is, of course, negligence to move a car without warning when those directing the movement have knowledge that others are in position to be injured by it. And a well-settled exception to the general rule that no warning of the movement of cars in switching operations is required exists where such warning is required by established custom or by rule of the company. McClellan v. Penn. R. Co. supra; Cain v. Fort Worth & Denver City R. Co. supra; Pacheco v. N. Y., N. H. & H. R. Co. (C.C.A.2d) 15 F.(2d) 467; Toledo, St. L. & W. R. Co. v. Bartley (C.C.A. 6th) 172 F. 82. In this case, however, as heretofore stated, there is nothing to indicate that those engaged in moving the cars had knowledge or reason to believe that decedent was in a position of danger, and there is no evidence of rule or custom requiring that warning of the movement of cars in switching operations be given. Rule 1153, to which our attention is called, clearly relates to the protection of the public at crossings and near passenger stations; rule 509 has reference to the movement of trains, not to the switching of cars; and rule 1150 relates to the placing of cars on sidings, not to switching signals.*

Our conclusion is that, whether decedent was between the cars leaning against one of them, as we think the evidence clearly shows, or whether he was near them and in a position to be struck by their movement, as counsel for appellant argue, there was no duty resting on defendant under the circumstances disclosed to give him warning of the intended

---

* "While switching over highway crossings or near passenger stations, trainmen must always give proper protection to the public." Rule 1153, S.R., R. 68.

"When a train is stopped it must stay until authorized to proceed or in case of absence or failure of means of communication, it may, after waiting five minutes, proceed under control, when preceded by a flagman to the next signal displaying a proceed indication." Rule 509, S.R. Employer's Rules.

"Cars left standing on main track sidings, yard or station tracks, must be clear of street, highway, private crossings, other tracks, hand brakes must be set sufficient to hold them, wheels blocked, if necessary, derailing switches where provided must be opened." Rule 1150, S. R. Employer's Rules.

movement, and consequently no breach of duty of which negligence could be predicated. On the contrary, as pointed out in the cases first cited, the movement of cars without warning in switching operations, was, in the absence of rule or custom requiring such warning, one of the ordinary risks of the employment which decedent assumed. The judgment in favor of defendant will accordingly be affirmed.

Affirmed.